McGREGOR W. SCOTT
United States Attorney
PHILLIP A. TALBERT
Assistant U.S. Attorney
Chief of Appeals
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2789

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOHN GRESCHNER, | ) | |
| | ) | |
| Petitioner, | ) | CV. NO. F-06-0295 LJO TAG HC |
| | ) | |
| v. | ) | RESPONDENT'S ANSWER TO |
| | ) | GRESCHNER'S § 2241 PETITION |
| U.S. PAROLE COMMISSION, et al.,| ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION

    In his § 2241 petition, petitioner claims that the United States Parole Commission ("Parole Commission") violated his due process rights because he was denied the opportunity at his parole hearing to present favorable evidence supporting release on parole. Petitioner also claims that the Bureau of Prisons ("BOP") violated his due process rights because petitioner has not received credit for time served on a state sentence towards the service of his federal sentence.  As detailed below, petitioner was provided with a full opportunity to present favorable evidence at his parole hearing, so that the petition should be denied as to his first claim.  As to his second claim, the petition should be dismissed

1

because petitioner has not exhausted his administrative remedies.
If the Court reaches his second claim on the merits, the petition
should be denied as to the claim because the BOP correctly
calculated petitioner's sentence in accordance with 18 U.S.C. § 3568
and applicable case law.

FACTUAL BACKGROUND

1.   <u>Sentence Computation</u>:   In 1984 petitioner was charged in a
two-count federal indictment in the District of Kansas with first
degree murder and conspiracy to commit murder.   18 U.S.C. §§ 7,
1111; case number CR-84-30005; Exhibit 7, Declaration of Community
Corrections Manager ("CCM") C. Cruz, Attachment 2, Judgment and
Commitment Order.   This indictment resulted from a murder petitioner
committed on another inmate on October 6, 1983, while confined at
the United States Penitentiary at Leavenworth, Kansas ("USP
Leavenworth").   This offense was unrelated to the Minnesota sentence
petitioner was serving at that time.   On June 29, 1984, petitioner
was sentenced to a term of life imprisonment on count one and life
imprisonment on count two to run consecutive to count one.   <u>Id</u>.
"Both sentences to be consecutive to any sentence which the
defendant is now serving."   <u>Id</u>.   The federal sentence commenced
(began to run) as of June 30, 1995.   The sentence for the 1983
offense was computed according to statutes and BOP policy in effect
prior to the Sentencing Reform Act.   See Exhibit 8, Declaration of
Legal Instruments Examiner ("LIE") E. Sours.

In the computation of the federal conviction, CR-84-30005,
petitioner did not receive credit for time spent in custody prior to
the expiration of his Minnesota state sentence on June 30, 1995,
///

2

because all that time in custody was credited to his Minnesota state sentence.

Between 1991 and January of 2004, petitioner filed 148 administrative remedy matters with the BOP.  At no time did he challenge the computation of his sentence.  See Exhibit 9, Declaration of C. Burks, Administrative Remedy Clerk.

Petitioner has been confined at a state facility as a federal prisoner since March 2004.  The BOP remains responsible for the computation of his sentence.

2.  <u>Parole Hearing</u>:  After petitioner became eligible for parole on the federal sentence, he applied for parole consideration, and a Parole Commission hearing examiner conducted his initial parole hearing on July 26, 2005.  Exhibit 1, hearing examiner's summary of the initial parole hearing.  Petitioner's wife appeared at the hearing as petitioner's representative, and the hearing examiner informed her that he had read a statement that she had prepared for the Parole Commission and that it would be included in petitioner's parole file.  <u>Id</u>. at 1.  She indicated that additional material would be sent for the Parole Commission's consideration. The hearing examiner discussed petitioner's federal offense with him.  They also discussed petitioner's criminal record and the fact that petitioner had been in custody since October 1968 serving one sentence or another, except for a few days that he was on escape. <u>Id</u>. at 2.  The hearing examiner established parole guidelines of 180+ months based upon petitioner's offense, and his salient factor score of 1.

The hearing examiner indicated that petitioner advised him that he had provided assistance to the government on matters of prison

security, national security, and other law enforcement matters and that petitioner provided him with information that he had prepared outlining the assistance.   Id. at 3.   The hearing examiner advised petitioner that in order for the Parole Commission to grant an award for his assistance to law enforcement, he should have the head of the relevant agency write a letter to the Parole Commission outlining his cooperation.[1]   Id. at 3.

The hearing examiner concluded that based upon petitioner's offense conduct and his extremely violent criminal history, he should be denied parole and continued to a 15-year reconsideration hearing.   Id. at 3-4.

The Parole Commission agreed with the hearing examiner's recommendation and, on August 4, 2005, issued its decision to continue petitioner to a 15-year reconsideration hearing in July 2020.   See Exhibit 2, Notice of Action.   The Parole Commission's regulations require that it identify aggravating factors for decisions in cases involving offenses rated as Category Eight that are more than 48 months above the lower limit of the guideline range.   See 28 C.F.R. § 2.20 Guidelines for Decision making, note to guideline table.   The Parole Commission advised petitioner of the following aggravating factors for its decision:

After review of all relevant factors and information, a

---

[1]   The hearing examiner mistakenly directed petitioner to a regulation at § 2.63, but it is 28 C.F.R. § 2.62 that pertains to the Parole Commission's consideration of assistance to law enforcement.   The Parole Commission does not require that the information come from the head of the agency that received assistance from the prisoner, but it should be from a source that would demonstrate the validity and reliability of the information, such as an Assistant U.S. Attorney, a Special Agent, the Warden or similar individual.

decision more than 48 months above the minimum guidelines
is warranted because you have an ongoing serious record of
assaultive behavior dating back to age 16.   Your
assaultive behavior includes the shooting and
hospitalization for 25 days of a victim in September of
1968 during a robbery, two persons was (sic) shot and
wounded during a robbery in October 1968, you attempted to
abduct a protective person during an escape attempt in
April of 1970, you held a protective person captive at
knifepoint in October of 1972, you doused another inmate
with a inflammable substance and ignited his body with a
match in February of 1975 and you assaulted a protective
person while in federal custody.   In addition, you have
engaged in assaultive behavior, which has not resulted in
convictions but have been found by the DHO during the
service of your state sentence in federal custody and your
assaultive behavior has been directed against both federal
prisons (sic) and staff.

Id.

Petitioner appealed the Parole Commission's decision and, on
October 31, 2005, the National Appeals Board affirmed the Parole
Commission's decision.   See Exhibit 3.

On July 10, 2007, a Parole Commission hearing examiner
conducted an interim hearing for petitioner.   See Exhibit 4.   The
hearing examiner indicated that the Parole Commission had received
information from petitioner's wife and that he had reviewed the
information.   Id. at 1.   The hearing examiner stated in the hearing
summary that he permitted petitioner to speak at length and make his
argument for parole.   Exhibit 4 at 3-4 outlines the favorable
information provided by petitioner.   The hearing examiner noted that
petitioner had not had any disciplinary reports.   Id. at 4.   The
examiner concluded that petitioner is a "highly dangerous
individual" and recommended no change in the Parole Commission's
decision to conduct a 15-year reconsideration hearing in July 2020.
Id. at 4.

///

1   On August 2, 2007, the Parole Commission issued its decision of
2   no change in the 15-year reconsideration hearing in July 2020.  See
3   Exhibit 5.

4   Petitioner appealed the Parole Commission's decision and, on
5   October 29, 2007, the National Appeals Board affirmed the Parole
6   Commission's decision.  See Exhibit 6.

7                      JURISDICTION AND VENUE

8   Petitioner is currently serving a federal life sentence for a
9   murder he committed at USP Leavenworth in 1984.  He is boarded out
10  to a state Department of Corrections facility, and his confinement
11  is supervised by the BOP'S Community Corrections Office ("CSC") at
12  Sacramento, California.  Venue is proper in the Eastern District of
13  California.  28 U.S.C. § 1391; Braden v. 30th Judicial Circuit Court
14  of Kentucky, 410 U.S. 484, 494-95 (1973); Hernandez v. Campbell, 204
15  F.3d 861, 864 (9th Cir. 2000); United States v. Giddings, 740 F.2d
16  770, 772 (9th Cir. 1984).

17  A habeas petition under 28 U.S.C. § 2241 is the proper way for
18  a prisoner to challenge decisions of the Parole Commission that
19  affect the fact or duration of the prisoner's confinement.  Benny v.
20  U.S. Parole Com'n, 295 F.3d 977, 988 (9th Cir. 2002).  It is also
21  the proper way for a prisoner to challenge decisions of the BOP that
22  affect his release date.  Fraley v. Bureau of Prisons, 1 F.3d 924,
23  925 (9th Cir. 1993).

24                          ARGUMENT

25  I.  Petitioner Was Provided With A Full Opportunity
        To Present Favorable Evidence At His Parole
26      Hearings

27  Petitioner claims that at his initial parole hearing in 2005,
28  he was not permitted to present favorable information in support of

6

his release on parole.  He cites the Parole Commission's regulation at 28 C.F.R. § 2.19 to support his claim.

To the extent that petitioner is seeking this Court's review of the Parole Commission's decision to deny parole and continue him to a 15-year reconsideration hearing, he cannot do so because judicial review of the Parole Commission's decision is limited.  The Ninth Circuit held in <u>Wallace v. Christensen</u>, 802 F.2d 1539 (9th Cir. 1986) (<u>en banc</u>), that discretionary decisions by the United States Parole Commission may not be judicially reviewed, even on a claim of "abuse of discretion."  802 F.2d at 1551.  Courts may only review claims that the Parole Commission acted outside the statutory scope of its discretion.  <u>Id</u>.; see <u>Walker v. United States</u>, 816 F.2d 1313, 1316 (9th Cir. 1987) ("Judgments involving a broad range of factors that the Commission takes into account in arriving at its decision are committed to the Commission's discretion and are unreviewable even for abuse of discretion"); <u>Meador v. Knowles</u>, 990 F.2d 503, 506 (9th Cir. 1993) ("The Commission's exercise of its judgment within the scope of its authority is unreviewable").

To the extent that petitioner is claiming that the Parole Commission violated its regulations or the statute at 18 U.S.C. § 4207, his claim has no merit.  The Parole Commission considers all available relevant information in making its decision.  See 28 C.F.R. § 2.19.  If information becomes available that a prisoner has provided assistance to law enforcement, as petitioner claims, the Parole Commission may consider that as a favorable factor in its parole release decision-making.  See 28 C.F.R. § 2.62(a).  However, the information must be from a reliable source in order for the Parole Commission to determine its credibility and to assign it the

7

appropriate weight in its decision-making.  See United States Parole

Commission Rules and Procedures Manual, Procedure 2.19-04 (Aug. 15,

2003), Exhibit 10, (providing guidance to Parole Commission hearing

examiners on assessing the information that the Parole Commission

receives).  The Parole Commission procedures manual also provides

the following guidance on assessing the reliability of information:

> The normal indicants of reliability are (a) the report is
> specific as to the behavior alleged to have taken place;
> (b) the allegation is corroborated by established facts;
> and (c) the source of the allegation appears credible.

See Procedure 2.19-06, Exhibit 10.  Here, however, none of the

normal indicants of reliability are present.  Petitioner did not

provide the Parole Commission with any information to substantiate

his claims, and he lacks the credibility of an official source.

Therefore, petitioner's claims of providing substantial assistance

to law enforcement are merely uncorroborated self-serving claims.

The hearing examiner made the discretionary determination that the

information was not reliable and that it should not be considered.[2]

The Parole Commission's evaluation of favorable and adverse

information is discretionary and not subject to judicial review.

See Wallace v. Christensen, 802 F.2d at 1552 (holding that judgments

made within Parole Commission's discretion are not reviewable);

Walker v. United States, 816 F.2d at 1317 (holding that the weight

given to a favorable factor such as institutional behavior is within

///

---

[2]  The Parole Commission may at any time reopen the case under
28 C.F.R. § 2.28(a) to consider new favorable information and
whether to modify its decision.  Therefore, if the Parole Commission
receives letters from law enforcement that verify petitioner's
claims, the Parole Commission can take them into consideration.

the Parole Commission's discretion and not subject to judicial review).

The record shows that petitioner received a full opportunity to present mitigating information and argue for release on parole at both of his parole hearings.  He received notice of the Parole Commission's decision, and the reason that the Parole Commission denied parole.  No more is required by due process.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 16 (1979) (holding that the opportunity to be heard and notice of the reasons that the inmate fell short of qualifying for parole affords the inmate with all the process that is due); Bowles v. Tennant, 613 F.2d 776, 778 (9th Cir. 1980) (at most the federal statute creates a liberty interest entitled to the limited protection of due process held by the majority in Greenholtz).

II.   Petitioner's Failure To Exhaust BOP Administrative
      Remedies Prior To Filing A Petition For Writ
      Of Habeas Corpus Warrants Dismissal Of The
      Petition

The BOP has established a three-tier administrative remedy process by which inmates can seek formal review of almost any aspect of their incarceration.  See 28 C.F.R. §§ 542.10 - 542.19 (1998).  Administrative remedy procedures require inmates to first file their complaint at their current institution within twenty (20) calendar days from the date of the event that is the basis for the grievance.  28 C.F.R. § 542.14.  In the case of a federal prisoner boarded to a non-federal facility, the Community Corrections Manager ("CCM") is the office to which Administrative Remedies are addressed, if the issue is one that only can be resolved by the BOP.  See Exhibit 7.  If an inmate is not satisfied with the CCM's response, the inmate

must file an appeal to the Regional Director within twenty (20) days.  28 C.F.R. § 542.15.  If an inmate is not satisfied with the Regional Director's response, the inmate must file an appeal to the General Counsel in Washington, D.C. within thirty (30) days.  Id. Federal inmates exhaust their administrative remedies once they receive a response from the General Counsel's Office.

For relief to be granted under habeas corpus, a prisoner must challenge the fact or duration of his confinement.  See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) (holding that habeas petition, not civil rights action, was a proper vehicle for seeking restoration of good-time credits); see also Nelson v. Campbell, 541 U.S. 637, 643-644 (2004) (discussing difference between suits challenging conditions of confinement, brought as civil rights actions, and those challenging the fact or duration of confinement, properly brought under habeas).  Inmates raising issues challenging the fact or duration of their confinement - such as sentence computation- must exhaust their administrative remedies prior to raising the issue in district court.  Tucker v. Carlson, 925 F.2d 330, 332 (9th Cir. 1990); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986)(per curiam) ("Federal prisoners are required to exhaust their administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court.") (citations omitted).

The compelling rationale for insisting that inmates, particularly those proceeding pro se, exhaust their administrative remedies is that administrative exhaustion permits federal agencies to correct their own mistakes, to develop an administrative record and, thereby, to facilitate judicial economy.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990); Chua Han Mow v. United States, 730

1    F.2d 1308, 1313 (9th Cir. 1984), <u>cert</u>. <u>denied</u>, 470 U.S. 1031 (1985).

2    See also Prison Litigation Reform Act, 42 U.S.C.§ 1997.

3       During petitioner's confinement in the BOP (from 1976 through

4    2004), he filed a total of 148 administrative remedies between 1992

5    and 2004, but none of them challenged the computation of his federal

6    sentence.  See Exhibit 9.  Petitioner has not exhausted his

7    administrative remedies relating to his sentence computation.

8    Therefore, the issue of sentence computation should not be examined

9    for the first time in litigation before this court.

10        III.  Petitioner Is Not Entitled To Receive Credit For
Time Served On A State Sentence Towards The

11            <u>Service Of His Federal Sentence</u>

12       Petitioner complains that he should receive credit for the time

13    he spent serving the 18-year state sentence in federal custody

14    towards the service of his federal sentence of life in prison.

15    Petitioner provides no legal support for his claim, but instead

16    states that he is entitled to this credit because the Parole

17    Commission has considered institutional infractions that he

18    committed while serving the state sentence in its decision to deny

19    him parole.

20       Institutional infractions that are committed prior to the

21    parole hearing are sanctioned by the Parole Commission under the

22    "rescission guidelines" set forth in 28 C.F.R. § 2.36.  See 28

23    C.F.R. § 2.20(i). Those guidelines apply to the sanctioning of

24    disciplinary infractions or new criminal behavior committed by a

25    prisoner subsequent to the commencement of his sentence and prior to

26    his release on parole.  See 28 C.F.R. § 2.36.  In petitioner's case,

27    because the behavior occurred prior to the commencement of his

28    federal sentence, it was not made part of the determination of the

parole guideline range.  See Exhibits B and E under the heading "Discipline."

Petitioner's prior record, which includes his disciplinary record in prison and his conduct in the community, is relevant to the Commission's determination.  See 18 U.S.C. § 4207; 28 C.F.R. § 2.19(a)(2); Guzman v. Morris, 644 F.2d 1295, 1298 (9th Cir. 1981). Therefore, although his disciplinary record while serving the state sentence was not taken into consideration to calculate his parole guidelines under 28 C.F.R. § 2.36, the Parole Commission may take the information into consideration in determining petitioner's suitability for release on parole.  As 18 U.S.C. § 4206 provides in relevant part:

> (a) if an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines: (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare. . ., such prisoner shall be released.

Petitioner's current federal sentence is for conviction of an offense that occurred October 6, 1983, when he murdered a fellow inmate at USP Leavenworth.  Because this offense occurred prior to November 1, 1987, petitioner's case is controlled under "old law," and the applicable statute for pre-sentence credit is 18 U.S.C. § 3568.  Title 18, United States Code, Section 3568 specifies that the Attorney General is responsible for sentence computation.  The authority of the Attorney General to compute sentences is delegated to the BOP by 28 C.F.R. § 0.96.  Therefore, it is the administrative responsibility of the Attorney General, the Department of Justice, and the BOP to compute sentences and apply credit where it is due.

It is not the province of the sentencing court.  See <u>Soyka v. Alldredge</u>, 481 F.2d 303, 305 (3d Cir. 1973); <u>Lee v. United States</u>, 400 F.2d 185, 188-90 (9th Cir. 1968); <u>United States v. Sanders</u>, 272 F. Supp. 245, 248 (E.D. Cal. 1967).

Section 3568 permits pre-sentence credit, but not under the circumstances of petitioner's sentence. The relevant portion of the statute reads as follows:

> The Attorney General shall give any person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which the sentence is imposed.

Petitioner's current sentence for the murder conviction involves two counts.  The sentence, as imposed by United States District Judge Rogers in Kansas, included a separate life sentence on each count of the two counts as a consecutive term to 1) each count and 2) consecutive to any other sentence the petitioner was serving.  See Exhibit 7, Attachment 2.  Thus, the sentence could not commence until completion of his Minnesota sentence in 1995.  See Exhibit 8.

Although not stated specifically in § 3568, challenges to the courts' ability to impose consecutive sentences under § 3568 and its predecessor statute were disposed of uniformly.  <u>Hill v United States</u>, 306 F.2d 245 (9th Cir. 1962); <u>Hiller v. United States</u>, 218 F.2d 641 (9th Cir. 1955), citing <u>United States v. Solomon</u>, 70 F.2d 834 (2d Cir. 1934); accord, <u>Parmagini v. United States</u>, 42 F.2d 721 (9th Cir. 1930).

The Minnesota state sentence ran continuously from 1972 through June 29, 1995.  All the time up to and including June 29, 1995, was credited to the Minnesota state sentence.  There is no "pre-sentence

1   custody credit" available to petitioner's current consecutive life

2   sentences.   None of petitioner's time in custody prior to June 30,

3   1995, was spent "in connection with the offense or acts for which

4   the sentence is imposed."   <u>Id</u>., Exhibit 8.

5                               <u>CONCLUSION</u>

6       For the foregoing reasons, it is respectfully requested that

7   Greschner's § 2241 petition be dismissed in part and denied in part.

8   DATED:  March 20, 2008                Respectfully submitted,

9                                         McGREGOR W. SCOTT
                                          United States Attorney
10

11                                        By: <u>/s/ PHILLIP A. TALBERT</u>
                                          PHILLIP A. TALBERT
12                                        Assistant U.S. Attorney
                                          Chief of Appeals
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   14

CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers.

That on March 20, 2008, she served a copy of Respondent's Answer to Greschner's § 2241 Petition by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Sacramento, California.

Addressee(s):

John Greschner
V-12545
CSATF/SP, D-1-130-U
P.O. Box 5242
Corcoran, CA 93212

                              /s/ CARRIE D. QUIRK
                              CARRIE D. QUIRK