# EXHIBIT 4

## HEARING SUMMARY

**Name: Greschner, John**
**CDC No. V12545**

**Reg No: 02550-135**

### Hearing Parameters

    Hearing Format ........................... : **In Person**
    Hearing Type ............................... : **Statutory Interim**
    Hearing Date ............................... : 7/10/2007
    Examiner ..................................... : Jeffrey S. Kostbar
    Institution .................................... : Corcoran Correctional Facility, California Department of
Corrections

### Sentence Parameters

    Sentence Type ............................. : **Federal**
    2/3 Date ....................................... : 6/29/2055
    Full Term Date ............................ : Life
    Months in Custody ...................... : 144 as of 6/30/2007
    Fines/Restitution/Assessment ..... : None
    Detainer ....................................... : None

**Additional text regarding the above parameters:** None

### Prior Action & Institutional Factors

**Prior Action:** Note – The subject is a Federal Case currently incarcerated as a Border Case in the State of California. The subject has a standing 15-Year Reconsideration Hearing which is set for July, 2020. The subject had requested that his wife represent him at today's hearing but she was not present. The subject indicated that she could not make the trip. He did sign the I-22 Waiver of Representation Form. The subject's wife did submit a packet of information to the Parole Commission prior to today's hearing and this examiner had that information in his possession at the hearing and had reviewed it prior to the hearing. Much of this information had been reviewed previously by the Commission either at the hearing level or the National Appeals Board level. In addition, the subject has indicated in his I-24 Form that he desired to see the information in his Parole Commission file. He stated that he had received a letter from the Commission that there was nothing new in his Parole Commission file that he had not seen previously and that he signed the forms indicating that he had recently seen the documentation. He did not know the exact date.

At the onset of this hearing, this examiner did spend time explaining to the subject the parameters of a Statutory Interim Hearing wherein a 15-Year Reconsideration Hearing had previously been set. During this explanation of the statute and rules concerning Statutory Interim Hearings in this instance the subject expressed himself fully and this examiner believes the subject understands, in detail, the Parole Commission's rules, regulations and statutes concerning this matter.

**EXHIBIT E**

This examiner allowed this subject a considerable amount of time to set forth his arguments at today's hearing. He is a very verbal individual and he allowed him great latitude to present his case.

History – The subject was originally convicted in US District Court in Kansas in 1984 for Murder and Conspiracy to Murder and given two consecutive life terms. His 2/3 date is "stacked" after 60 years relative to the two life terms.

The offense occurred just months after the subject was released from the Marion Control Unit and placed in the open population at USP Leavenworth. On 10/6/83 the subject and another individual attacked and killed a victim inmate. The victim died of 25 stab wounds. The attack and murder was aggravated by the fact that officers attempted to stop the attack but the offenders refused to stop. They resisted efforts by the officers by chasing and threatening the officers with knives. One of the officers suffered a broken wrist and torn ligaments and tendons as a result of trying to stop the attack and meeting with resistance.

A further aggravating factor, which I suggest that parole not be granted at any time on his term, (see page 26 and 27 of the manual), although not explicitly stated in the PSI, it appears that the reason for the murder/motivation for the murder of the felon inmate was to silence a witness/victim. Our subject, Greschner, was a member of the Aryan Brotherhood. He as assisted in the murder by another inmate who is a sympathizer of the Aryan Brotherhood. The victim was a victim in another criminal case and had been subpoenaed to testify in California in that case. It appears that the murder of this victim was for the purpose of silencing a witness/victim.

The subject has been in custody approximately 39 years. The history of this case indicates that in November of 1974 the Federal Bureau of Prisons accepted the subject into custody as a contract prisoner from Minnesota. He had been in Minnesota serving an 18 year aggregate term for Escape/Kidnapping and Aggravated Assault. The rationale behind his transfer was to provide closer controls as the subject was a serious management problem in Minnesota. He was therefore designated to serve his time at USP Marion and was the Marion Control Unit.

While in transit, he escaped and took his escorting officer hostage at knifepoint. He was apprehended and returned to Minnesota and never made the actual transfer until 1976.

Initially, the subject was placed in Marion in the Control Unit but worked his way into the general population. While in general population he received numerous and serious incident reports as well as a new term of federal imprisonment of 20 years from the Southern District of Illinois in 1980. That term is now over. However, it did involve the subject freeing himself from handcuffs while getting a hair cut and stabbing another inmate 12 times with a homemade shank. That inmate did recover. In 1981 he was returned to the Control Unit.

After sometime in the Control Unit he did qualify for USP Leavenworth general population and was transferred there in 1983. Again, as noted above, this was all while he was serving his Minnesota State Term and he committed the murder of a federal inmate, described above, just 5 months after his transfer. If the subject should remain incarcerated until 6/29/2055, at his mandatory 2/3 parole date, he will be 104 years old at that point in time.

The subject has supplied multiple times, written statements wherein he claims he provided varied and numerous types of assistance to the government. At today's hearing he supplied additional information to that affect in the forms of submissions prior to the hearing and letters at the hearing. The Commission has viewed these claims in the past and the claims have been found not to be credible.

The subject was transferred to the Florence ADX Facility and was in that Super Max Facility for some time. Ultimately, he was transferred to State custody in California as a contract prisoner on 11/10/2003.

The subject explained at today's hearing that he was sent to Pelican Bay to their Super Max Unit when he first arrived in California and ultimately worked his way out of that unit into the general population of the Facility at Corcoran where he is currently housed.

In the past, the subject has been referred for Original Jurisdiction but was not designated as such.

The subject's category is a Category Eight with a SFS of 1 and his guidelines are 180+ months. A decision was made to continue him in excess of 48 months above the minimum Category Eight guideline range and to continue him to a 15-Year Reconsideration Hearing to July, 2000 based upon the following:

"You have an ongoing serious record of Assaultive Behavior dating back to age 16. Your assaultive behavior includes a shooting and hospitalization for 25 days of a victim in September, 1968. During a robbery in October, 1968, two persons were shot and wounded. You attempted to abduct a protected person during an Escape Attempt in April of 1970. You held a protected person captive at knifepoint in October of 1972. You doused another inmate with flammable substance and ignited his body with a match in February of 2005. You Assaulted a Protected Person while in Federal custody. In addition, you have engaged in assaultive behavior, which has not resulted in conviction but you have been found guilty by the DHO during service of your state sentence in Federal custody and your assaultive behaviors been directed against both federal prisoners and staff.

**Codefendants:** None.

**Representative & Representative's Statement:** The subject waived representation.

**Prisoner's Statement:** As noted previously, this examiner explained the statutes and rules and regulations to the subject in detail. However, he was well versed in the subject and very verbal concerning the matter. He believes that he is an appropriate candidate for parole and he believes that his 15-Year Reconsideration should be advanced and that he should be immediately paroled.

The subject states that his last disciplinary report was in 2001. He indicates that he has had not disciplinary reports of any type since that time and that he has been in open population since 2004.

The subject wanted to highlight the fact that he has not been able to get a job at the California Facility due to a long waiting list. However, he has started as Brutus Program, is an Inmate Counselor, is the Chairman of a Religious Committee, and has done public service films. He indicates that he is working with law enforcement to help people get out of gangs. He claims that he has provided significant intelligence information to the United States concerning "Iraq stuff". He states that he was incarcerated with no terrorist in Florence, CO and that they taught him and he passed that information on. This

examiner would note, that there has been no credible evidence submitted from law enforcement or government authorities to back up the subject's repeated claims to this affect.

The subject indicates that he will be an asset to the community and he feels that he can work with children. He emphasizes that he has been incarcerated for 39 years. He states that since he has been in California he understands what is going on in the world and that his eyes were closed to this before but now they are open. He states that he has served as an expert witness in Federal Court on gangs and he has long ago disassociated himself from gang activity.

The subject believes that keeping him in prison understandable but retaliatory. The subject believes that he should be assessed and punished for actions in the past as that happened long ago and he has been incarcerated enough time and has something to offer the community if released.

**Discipline:** None.

**Program Achievement:** As explained above, the subject's major program achievement since 2004 has been the fact that he has extricated himself from the Pelican Bay Control Unit in the State of California and has been surviving in open population without committing new disciplinary conduct behavior. He stresses the Voluntary Programs that he has been involved in and he desires an advancement of his 15-Year Reconsideration Hearing Date. This examiner does not believe an advancement of the 15-Year Reconsideration is in order in this case. I will not recommend such.

**Release Plans:** The subject states that he plans to live with his wife when released and she lives in Santa Rosa, CA. He indicates that he is now 56 years of age and ready for release.

<u>**Guideline Parameters, Evaluation & Recommendation**</u>

**Evaluation:** This examiner can find no rational basis for an advancement of the 15-Year Reconsideration Hearing which has been applied to this case. This is spite of the subject's lengthy and detailed argument that he should qualify for such an advancement.

This examiner believes that the subject is a highly dangerous individual now or likely at any time during the service of this term. Further, the specifics of the murder for which he is currently incarcerated and the aggravating circumstances surrounding it, as well as his overall conduct during his lengthy Minnesota State and Federal incarceration which suggest that he is an inappropriate candidate for parole on this term, for, more specifically, at this hearing, for advancement of his 15-Year Reconsideration Hearing.

**Recommendation:** No change in previous decision. Continue to a 15-Year Reconsideration Hearing in July, 2020.

**Conditions:** N/A.

**Statutory Interim Hearing:** July, 2009.

**Guideline Use:** N/A.

**Additional Text:** None.