U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

FILED

APR 24 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____ Deputy

JOHN GRESCHNER
PETITIONER

V.

U.S. PAROLE Comm'ss., ET AL.,

RESPONDENT

CV. NO.:

F-06-0295 LJD TAG
HC.

PETITIONER GRESCHNER'S PRO SE
TRAVERSE TO RESPONDENTS
ANSWER TO HABEAS CORPUS
DATED MARCH 20, 2008

Comes NOW PETITIONER JOHN GRESCHNER
PRO SE, AND REPLY's TO RESPONDENT'S AN-
SWER TO PETITIONER'S HABEAS CORPUS As
FOLLOWS.

Petitioner's Reply

PETITIONER WILL ADDRESS THE ISSUE's
GROUNDS IN THE SEQUENTIAL ORDER of THE
WRIT, AND RESPONDENTS ANSWER, 1.) DENIAL of
DUE PROCESS AND EQUAL PROTECTION RIGHTS
TO SUBMIT INFORMATION AND DOCUMENTS DIR-
ECTLY FROM PETITIONER TO U.S. PAROLE COM-
MISSIONER DURING INITIAL (ORIGINAL)
PAROLE HEARING IN SUPPORT OF PETITIONER'S
READINESS FOR PAROLE, AND 2.) PETITIONER
WAS DENIED DUE PROCESS AND EQUAL PRO-

— 1 —

CREDIT TOWARD BOTH THE TIME SERVED ON HIS FEDERAL SENTENCE, AND AS IT APPLIES TO THE U.S. PAROLE COMMISSION GUIDELINE GRID, AND PETITIONER'S RANGE ON SAME, INCLUDING CREDIT TOWARD RANGE, DUE TO COMMISSIONER HARRY DWYER USING AND CITING D.H.D. (DISCIPLINARY HEARING REPORTS) FOR SETTING PETITIONER'S PAROLE GUIDELINE RANGE, DURING SERVICE OF PETITIONER'S STATE SENTENCE WHILE IN FEDERAL BOP CUSTODY. THIS ASSERTION IS minimally BORNE OUT IN RESPONDENTS EXHIBIT # 2, SECTION: "REASONS", AT LAST FOUR (4) SENTENCE'S; THE FULL EXTENT OF THE DEPRIVATIONS OF PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS ARE NOT REFLECTED IN THE EXISTING RECORD, DUE TO THE VIOLATION OF THE U.S. PAROLE COMMISSION REGULATION'S 28 C.F.R. § 2.12 INITIAL HEARING; PROCEDURE; SUBDIVISION (f): "A FULL AND COMPLETE RECORD of EVERY HEARING SHALL BE RETAINED BY THE COMMISSION."

THE U.S. PAROLE COMMISSIONER DWYER, AND COMMISSION ITSELF, DESTROYED (ERASED) THE ENTIRE TAPE RECORDED "RECORD" of PETITIONER'S INITIAL HEARING, IN VIOLATION of THE LAW AND PETITIONER'S RIGHTS THERE-IN, AND THE EVIDENCE CONTAINED IN SAID

TAPED RECORDING "RECORD" THAT PROVED PETITIONER'S ASSERTIONS IN HIS WRIT FOR HABEAS CORPUS RELIEF; SAID DESTRUCTION ON THE TAPE RECORDING OF THE CRITICAL EVIDENCE OF WHAT ACTUALLY OCCURRED DURING THE INITIAL PAROLE HEARING, VIOLATED BOTH THE LAW (28 CFR § 2.13 (f) [FULL AND COMPLETE RECORD SHALL BE RETAINED], < FURTHER AT SUBDIVISION (f)> ; "UPON REQUEST, PURSUANT TO 28 CFR § 2.56, THE COMMISSION SHALL MAKE AVAILABLE TO ANY ELIGIBLE PRISONER' SUCH RECORD AS THE COMMISSION HAS RETAINED OF THE HEARING", SECTION § 2.56 (e) HEARING RECORD. HOLDS: "UPON REQUEST BY THE PRISONER OR PAROLEE CON-CERNED, THE COMMISSION SHALL MAKE A-VAILABLE A COPY OF ANY VERBATIM RECORD (e.g., TAPE RECORDING) WHICH IT HAS RETAINED OF THE HEARING, PURSUANT TO 18 USC 4208 (f)".

THIS IS IMPORTANT, (TAPED VERBATIM RE-CORD OF HEARING TO BE RETAINED), BECAUSE A PRISONER OR HIS ATTORNEY ARE NOT PER-MITTED TO BRING A REPORTER OR RECORDING DEVICE TO THE HEARING (SEE: 28 CFR 2.13 - 00. REPRESENTATION, AT SUBDIVISION (g) REPORTER OR RECORDING DEVICE); AND THE VERBATIM RECORD (TAPE RECORDING) IS CRITICAL, FOR ANY MEANINGFUL AND ACCURATE REVIEW BY A RE-VIEWING COURT OR ADMINISTRATIVE BODY, SUCH AS THIS VERY COURT, OR THE U.S. PAROLE BOARD,

— 3

DUE TO IT'S EVIDENTIARY VALUE AS A IRREFUTABLE RECORD OF WHAT ACTUALLY OCCURRED AT THE HEARING, AS OPPOSED TO BIASED SUBJECTIVE INTERPRETED EXCERPT MAINTAINED BY THE U.S. PAROLE COMMISSION. CLEARLY, A NEW INITIAL HEARING, WITH A FULL AND ACCURATE VERBATIM RECORD (TAPE RECORDING), ILLUSTRATING ALL PARTIES FOLLOWING THE DIRECTIVES OF THE LAW, AND ALL RIGHTS ALLOWED THE PARTIES BEING PERMITTED AND EXERCISED, IS IN ORDER, TO COMPORT WITH THE LAW, AND ALLOW FOR ANY FURTHER FUTURE APPELLATE REVIEW, ON A FULL AND CLEAR AVAILABLE HEARING RECORD.

PETITIONER REQUESTED THE VERBATIM RECORD (TAPE RECORDING OF HEARING) (SEE: ATTACHED EX. # 1 ), BUT WAS DENIED SAME BY THE F.O.I.A. SECTION OF U.S. PAROLE COMMISSION, STATING THAT THE RECORDING HAD BEEN DESTROYED (ERASED). (SEE: ATTACHED EXHIBITS: EX # 2 , COPY OF 28 CFR § 2.13 INITIAL HEARING: PROCEDURE, SUBD. (f); EX # 3 , COPY OF 28 CFR § 2.13.-00 REPRESENTATION. SUBD. (g) REPORTER OR RECORDING DEVICE.; COPY OF 28 CFR § 2.56 (e) HEARING RECORD, EX # 4 .

) DENIAL OF DUE PROCESS AND EQUAL PROTECTION OF LAW TO SUBMIT INFORMATION AND DOCUMENTS DIRECTLY FROM PETITIONER TO U.S. PAROLE COMMISSIONER DURING INITIAL HEARING IN SUPPORT OF PETITIONER'S READINESS FOR PAROLE.

---

DURING PETITIONERS INITIAL (ORIGINAL) PAROLE HEARING, PETITIONER ATTEMPTED TO EXERCISE HIS DUE PROCESS RIGHTS PURSUANT TO 28 CFR § 2.19 INFORMATION CONSIDERED: (b)(1) ("THERE SHALL ALSO BE TAKEN INTO CONSIDERATION SUCH ADDITIONAL RELEVANT INFORMATION CONCERNING THE PRISONER (INCLUDING INFORMATION SUBMITTED BY THE PRISONER) AS MAY REASONABLY BE AVAILABLE (18 USC 4207). THE COMMISSION ENCOURAGES THE SUBMISSION OF RELEVANT INFORMATION CONCERNING AN ELIGIBLE PRISONER BY INTERESTED PARTIES".

U.S. PAROLE COMMISSIONER HARRY DWYER DENIED PETITIONER HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF LAW TO SUBMIT HIS RELEVANT INFORMATION IN SUPPORT OF HIS ELIGIBILITY FOR PAROLE, BY REFUSING TO ACCEPT ANY OF THE INFORMATION AND DOCUMENTS.

COMMISSIONER DWYER, OPENLY, AND INTO THE TAPE RECORDER, STATED THAT "PETITIONER 'COULD NOT PERSONALLY SUBMIT THE INFORMATION OR DOCUMENTS'". PETITIONER CHALLENGED COMMISSIONER DWYER, OPENLY, AND INTO THE TAPE RECORDED RECORD, STATING THAT PETITIONER HAD A DUE PROCESS RIGHT UNDER 28 CFR 2.19 AND THE LAW TO SUBMIT THE INFORMATION, AND COMMISSIONER DWYER STATED PETITIONER WAS INCORRECT, AND THAT DWYER COULD NOT ACCEPT INFORMATION DIRECTLY FROM PETITIONER. THE VERBATIM RECORD (TAPE RECORDING) OF ALL OF THIS, WAS SUBSEQUENTLY DESTROYED (ERASED) AFTER THE HEARING, TO CONCEAL THE DENIALS OF PETITIONER'S DUE PROCESS RIGHTS, DUE TO THE SERIOUS NATURE OF THE INFORMATIONS AND DOCUMENTS THAT PETITIONER WAS SUB-

MOTION IN SUPPORT OF PROSECUTION PROPERTY FOR PAROLE. (SEE ATTACHED EXHIBITS: EX # 5 , 6-PJ, 9-16-99 LTR TO U.S. SENATOR PAUL WELLSTONE, (BOMBING CONSPIRACY TO KILL FEDERAL BOP OFFICIALS), EX # 6 , 2-PJ, 10-11-99, LTR, TO DIRECTOR KATHERINE SAWYER, FEDERAL BOP, WARNING OF BOMB PLOT; EX # 7 , 1-PJ, 10-8-99, LTR FROM F.B.I, TO U.S. SEN, WELLSTONE, REGARDING BOMB CONSPIRACY; EX # 8 , 1-PJ, 10-20-99 LTR TO PETITIONER FROM U.S. SEN. WELLSTONE, RE: BOMBING CONSPIRACY; EX # 9 , 1-PJ, 2-22-2000, LTR TORT CLAIM (# T-NCR-99-758) RE: THEFT OF PETITIONER'S LTR TO F.B.I, AGENT CONWAY, REGARDING PARTICULARS OF BOMBING CONSPIRACY; EX # 10 , 1-PJ, 11-9-99, LTR FROM A.U.S.A., T. E. LUEDKE, TO PETITIONER, RE: CREDIT PETITIONER WILL (SHOULD) RE-CEIVE FOR PETITIONERS ASSISTANCE IN THE PROSECUTION OF A NARCO-TRAFFICKER A.B. MEMBER. MCELHINEY; EX # 11 , 6-PJ, 5-28-00 LTR TO TEXAS DEPT. OF PUBLIC SAFETY AND TEXAS GOVER-NOR GEORGE W. BUSH JR., RE; WARNING OF THE THEFTS OF TEXAS STATE CITIZEN'S PRIVACY DATA'S BY U.S. DOJ\ATF\FBI\FBOP INMATE INFORMANTS, IN THE ILLEGAL FBOP ADX-FACILITY H-UNIT (INTELLIGENCE UNIT); EX. # 12 , 5-PJ, 5-13-01 LTR TO FBOP S.I.S. (INVESTIGATOR), RE: THREAT\ CONSPIRACY TO MURDER A CAPE PLAN; CONTRABAND SMUGGLING ETC; EX # 13 , 7-PJ, 6-19-01, ES-LTR; CORRUPTION AT PRISON-MEDICAL FACILITY, THREAT TO KILL FEMALE EMPLOYEE, ESCAPE PLAN; CONTRABAND SMUGGLING ETC; FBOP DIRECTOR HAWRE-SAWYER, ON THREAT TO KILL FEMALE EMPLOYEE; LTR TO S.I.S.; EX # 14 , 1-PJ, 6-19-01 LTR TO (EX # ABOVE, 5-PJ, LTR TO S.I.S. LIEUTENANT); EX # 15 , 5-PJ, 7-21-01 LTR TO S.I.S. LIEUTENANT FROM PETITIONER; RE: (SAME AS EX # 12, 13 ABOVE); EX # 16 , 1-PJ, 2-21-01 LTR TO FBOP DIRECTOR HAWRE-SAWYER FROM PETITIONER, ENCLOSING 5-PJ, 7-21-01, S.I.S, LTR; EX # 17 , 6-PJ, 8-19-01 LTR TO S.I.S. LT. FROM PETITIONER, ASSISTING FURTHER THE INVESTIGATION INTO THE THREAT TO KILL THE FEMALE EMPLOYEE ETC (EX # 12,13,15 ABOVE); EX. # 18 , 1-PJ, 5-19-01 LTR, TO FBOP DIRECTOR SAWYER, ENCLOSING A COPY OF THE 6-PJ S.I.S. LT. LTR, (EX. # 17 ABOVE); PETITIONER WAS KEEPING THE DIRECTOR APPRISED, DUE TO ALL THE CORR-UPTIONS AND FBOP COVER UP ACTIVITIES; EX. # 19 , 4-PJ, 6-19-01 LTR TO N.S.A, C. RICE FROM PETITIONER, WARNING OF THE THEFTS OF CLASSIFIED NATIONAL SECURITY DOCUMENTS, FROM THE ILLEGAL INTEL UNIT (H-UNIT) AT FBOP ADX-FLORENCE COLORADO BY FBI\ATF\USDOJ INMATE INFORMANTS;

— 1. —

DEATHS OF FOREIGN (MEXICAN) GOVERNMENT OFFICIALS DUE TO STOLEN CLASSIFIED DOCUMENTS (ABOVE STATED); THREATS OF MULTIPLE AIRCRAFT HI-JACKINGS BY FOREIGN NATIONAL TERRORISTS', THREAT TO DESTROY (FINISH THE JOB) ON THE WORLD TRADE CENTER (WTC) BY TERRORISTS', EX. * 20 3-Pg 9-14-01 LTR TO USA C. RICE, ET.AL, FROM PETITIONER THAT NEXT WAVE OF TERRORIST ATTACKS MAY IN-CLUDE SHOULDER FIRED S.A.m.'s, BIO-AGENT ATTACKS ETC; (NOTE: THERE IS MUCH MORE NAT-IONAL SECURITY RELATED INFORMATIONS\DOC-UMENTS THAT NEED NOT BE CITED HEREIN AT THIS TIME, DUE TO THEIR CLASSIFIED NA-TURE, BUT THAT THIS PETITIONER WILL PRO-VIDE TO THIS COURT, IF THE COURT REQUESTS SAME).

PETITIONER ASSERTS TO THIS COURT THAT HE HAS A PROTECTED DUE PROCESS RIGHT, AND A EQUAL PROTECTION OF LAW RIGHT, TO PRE-SENT THE ABOVE STATED INFORMATIONS AND DOCUMENTS TO THE U.S. PAROLE COMMISSION, AT PETITIONER'S INITIAL HEARING, TO ILLUSTRATE HIS READINESS FOR PAROLE, AND THAT THE FACT ITSELF, OF PETITIONER SENDING THE ABOVE STATED INFORMATIONS AND DOCUMENTS TO LAW ENFORCEMENT AND GOVERNMENT OFFI-CIALS, IS ITSELF INDICATIVE OF PETITION-ER'S READINESS FOR PAROLE, AND INDICATES UPHOLDING BOTH THE LAWS OF SOCIETY AND PROTECTING ITS CITIZENS, AND OF

IONAL SECURITY INTERESTS. FURTHER, TO REQUIRE A GOVERNMENT AGENCY TO REPLY, (AGENCIES SUCH AS C.I.A., N.S.A., D.O.D. ETC) IN MATTERS OF NATIONAL SECURITY, BEFORE PETITIONER IS ALLOWED TO SUBMIT INFORMATION IN SUPPORT OF HIS READINESS FOR PAROLE, AND THE COMMISSIONS CONSIDERATION OF THE INFORMATION, IS UNREALISTIC, DUE TO THE SENSITIVE NATURE OF THE INFORMATION; AND IT FURTHER CLASHES WITH AND SUBVERTS THE DUE PROCESS RIGHTS TO SUBMIT THE INFORMATION ITSELF.

28 CFR § 2.19 INFORMATION CONSIDERED, "INCLUDING INFORMATION SUBMITTED BY THE PRISONER", SHALL BE TAKEN INTO CONSIDERATION. IT DOES NOT REQUIRE ADDITIONAL AGENCY INPUT, TO MAKE IT RELEVANT TO THE ISSUE OF A PRISONER'S READINESS FOR PAROLE; IF IT DID, THE § 2.19 SECTION WOULD HAVE STATED SO.

ADDITIONALLY, CONTRARY TO THE ASSERTION BY RESPONDENTS COUNSEL THAT INFORMATION ILLUSTRATING PETITIONER'S ASSISTANCE TO LAW ENFORCEMENT, PROSECUTING ATTORNIES OR OTHER GOVERNMENT AGENCIES, MUST COME FROM SAID GOVERNMENT AGENCIES, PURSUANT TO 28 CFR § 2.62, NOWHERE IN SECTION § 2.62 IS THIS STATED. UNDER § 2.62 (a)(2) IT SIMPLY STATES THAT THE ASSISTANCE (TO LAW ENFORCEMENT) MUST BE REPORTED "IN SUFFICIENT DETAIL" TO PERMIT A FULL EVALUATION.

— 8 —

(SEE $EX^{#}2$) AND 22, $\S 2.62-0$), IS

NOTES AND PROCEDURES UNDER $\S 2.62-0$),

APPLICATION. RESPONDENT'S COUNSEL IS MIS-

STATING THE REQUIREMENTS OF SECTION 2.62

ET SEQ.

PETITIONER MAINTAINS, THAT PURSUANT

TO $\S 2.19$, HE HAS A PROTECTED RIGHT TO

SUBMIT INFORMATION IN SUPPORT OF HIS

ASSERTED READINESS FOR PAROLE, AND THE

PAROLE COMMISSION IS OBLIGATED BY IT'S

REGULATIONS TO GIVE SAID INFORMATIONS DUE

CONSIDERATION. THE U.S. PAROLE COMMISSION'S

REFUSAL TO DO SO, BY AND THROUGH IT'S

COMMISSIONER DWYER AT THE CRITICAL

STAGE, OF PETITIONER'S INITIAL PAROLE HEAR-

ING, WHICH IS THE ONLY STAGE AT WHICH THE

INFORMATION WILL BE GIVEN CONSIDERATION,

IS A VIOLATION OF PETITIONER'S PROTECTED DUE

PROCESS RIGHT TO SUBMIT SAID INFORMATION

IN SUPPORT OF PAROLE, GREENHOLTZ V. IN-

MATES OF NEBRASKA PENAL & CORRECTIONAL

COMPLEX, 442 US 616 (1979); BOWLES V. TENNANT

613 F2d 776, 778 (CA9 1980). THE PAROLE

COMMISSION IS BOUND BY IT'S REGULATIONS;

CENICEROS V. U.S. PAROLE COMMISSION, 837

F2d 1358 (1988); AND THE U.S. PAROLE COMM-

ISSION ACTED OUTSIDE IT'S DISCRETION AND SCOPE OF THE REQUIRA-

TORY GUIDELINES, AND THE STATUTORY REQUIRE-

MENTS OF THE PAROLE COMMISSION AND REORGANIZATION

ACT 18 USC 4201 ET SEQ., IN REFUSING TO ACCEPT

AND CONSIDER PETITIONERS INFORMATION IN SUPPORT

OF HIS READINESS FOR PAROLE, AND THIS COURT HAS THE

— 9 —

EW THE COMMISSIONS FAILURE TO CONSIDER PETITIONER'S INFORMATIONS, WHICH BY REGULATION AND STATUTE IT IS REQUIRED TO CONSIDER IN RENDERING IT'S PAROLE DECISIONS. THIS VIOLATED PETITIONER'S RIGHTS TO DUE PROCESS OF LAW UNDER THE U.S. CONST. AMDT. 5, VIOLATED PETITIONER'S RIGHTS TO EQUAL PROTECTION OF THE LAW UNDER THE U.S. CONST, AMDT. 5, WALLACE V. CHRISTENSEN, 802 F2D 1539 (CA 9 1986).

RESPONDENTS COUNSEL ATTEMPTS TO CLEAN UP THE DUE PROCESS VIOLATIONS SUPRA, BY STATING PETITIONER HAD A "INTERIM PAROLE HEARING" ON JULY 10, 2007 (2-YEARS AFTER PETITIONER'S INITIAL PAROLE HEARING); AND RESPONDENTS COUNSEL ALLEGES THAT THE INTERIM HEARING EXAMINER JEFFREY HOSTBAR GAVE DUE CONSIDERATION TO PETITIONERS INFORMATION IN SUPPORT OF PAROLE.

THIS IS INACCURATE, AND MISTATES THE FACTS. PETITIONER'S WIFE, ROXANNE GRESCHNER HAD SENT INFORMATION IN SUPPORT OF PETITIONER'S PAROLE TO THE PAROLE COMMISSION IN MARYLAND; SAID PACKAGE OF INFORMATION WAS APPROXIMATELY 2-INCHES THICK, AND EXTENSIVE IN DEPTH INFORMATION DEALING MOSTLY WITH PETITIONER'S ASSISTANCE TO FEDERAL GOVERNMENT OFFICIALS (NSA C. RICE; CIA TENANT; DOD RUMSFELD; FBI R. MEULLER; U.S. SEN'S WELLSTONE, CLINTON; LEAHY; AND MANY OTHERS) IN MATTERS OF NATIONAL SECURITY (TERRORIST THREATS); THE U.S. PAROLE COMMISSION HAD NEVER REVIEWED THIS INFORMATION (SEE: RESPONDENTS EXHIBIT #6, REASONS: PARAGRAPH TWO (2), LINES 3-8, WHERE THE COMMISSION STATES "YOU PROVIDE NO ADDITIONAL INFORMATION BUT ASK THE BOARD TO LOOK TO YOUR PAROLE FILE FOR THIS INFORMATION".

ADDITIONALLY, AS REPEATEDLY STATED BY COMMISSIONER HOSTBAR DURING THE INTERIM HEARING, THE INTERIM HEARING IS NOT A NEW PAROLE HEARING, BUT ONLY A LIMITED HEARING TO DETERMINE IF THERE

— 10 —

WERE ANY CHANGES IN PETITION REGULA-
TIONS THAT WOULD APPLY RETROACTIVELY TO PETI-
TIONERS ORIGINAL (INITIAL) PAROLE HEARING IN 2005
AND CHANGE THE DECISION. SEE: RESPONDENTS EX.#5, REASONS, LINES 3-6.
REPEATEDLY INTERRUPTED PETITIONER, STATING THAT
THERE WERE NO NEW RETROACTIVE RULE CHANGES, AND
REFERRED PETITIONER TO THE PAROLE REGULATIONS,
28 C.F.R. SECTION § 2.14 SUBSEQUENT PROCEEDINGS
ET SEQ., AND COMMISSIONER MISSTATED THE PUR-
POSE OF THE INTERIM HEARINGS TO PETITIONER, CLAIM-
ING THEY'RE ONLY FOR RETROACTIVE RULE CHANGES,
OR DRASTIC CHANGES SUCH AS PETITIONER'S IMMINENT
DEATH. (SEE: TAPE RECORDING OF PETITIONER'S INTERIM
HEARING, JULY 10, 2007. [NOTE: PETITIONER SECURED A
COPY OF SAID VERBATIM RECORD - TAPE RECORDING -
BUT IS UNABLE TO COPY SAME AND SEND IT TO THE
COURT; AND RESPONDENTS COUNSEL. TO THE EXTENT
THAT THE ROSTBAR 2007 INTERIM HEARING IS CON-
SIDERED RELEVANT, PETITIONER MOVES FOR A EVID-
ENTIARY HEARING. ROSTBAR, IN THE VERBATIM RE-
CORD CLEARLY REFUSES TO CONSIDER ANY "NEW"
INFORMATION, CONTINUALLY STATING, INTERIM HEAR-
INGS ARE FOR RETROACTIVE RULE CHANGES]).

PETITIONER, UPON REVIEWING THE WRITTEN IN-
TERIM HEARING REPORT BY ROSTBAR, FOR THE FIRST
TIME IN RESPONDENTS ANSWER TO HABEAS PETITION,
(AT EXHIBIT ※ 4) HAS FOUND NUMEROUS INACCUR-
ACIES AND MIS-STATEMENTS OF THE FACTS BY
COMMISSIONER ROSTBAR; ADDITIONALLY, ROSTBAR
AT Pg 2, PARAGRAPH FOUR (4), LINE 6-7, STATES:
" IT APPEARS THAT THE MURDER OF THIS VICTIM WAS
FOR THE PURPOSE OF SILENCING A WITNESS \ VICTIM".
THERE ARE NO EXISTING FACTS TO SUPPORT THIS
STATEMENT BY ROSTBAR; ADDITIONALLY, AT NO TIME
DURING THE INTERIM HEARING DID ROSTBAR APPRISE
PETITIONER OF THIS FABRICATION OF ROSTBAR, IN
WHICH TO DENY PAROLE (SEE: VERBATIM RECORD OF
HEARING [TAPE RECORDING]; THIS IS IN VIOLATION OF
THE PAROLE COMMISSION REGULATIONS REQUIRING THAT

PETITION RE OF THE FACTS USED BY THE PAROLE COMMISSION ON WHICH THE COMMISSION BASES ITS DECISION. (SEE: 28 CFR § 2.19 INFORMATION CONSIDERED, SUBD. (C)), WHICH STATES: "THE COMMISSION MAY TAKE INTO ACCOUNT ANY SUBSTANTIAL INFORMATION AVAILABLE TO IT IN ESTABLISHING THE PRISONER'S OFFENSE SEVERITY RATING --- ANY AGGRAVATING FACTORS ...' PROVIDED THE PRISONER IS APPRISED OF THE INFORMATION AND AFFORDED AN OPPORTUNITY TO RESPOND'--") (SEE: EX.# 23) . PETITIONER WAS NEVER APPRISED OF THIS INFORMATION BY KOSTBAR, NOR GIVEN A OPPORTUNITY TO RESPOND (SEE: INTERIM HEARING TAPE RECORDING); ADDITIONALLY, KOSTBAR CLAIMS THE INFORMATION IS NOT "EXPLICITLY STATED" IN THE PSI (PRESENTENCE INVESTIGATION), KOSTBAR CLAIMS IT 'APPEARS' THE REASON FOR THE MURDER WAS TO SILENCE A WITNESS) VICTIM; THIS IS A MIS-STATEMENT OF FACTS, AND A FABRICATION BY KOSTBAR. THIS FAILURE TO APPRISE PETITIONER OF THE USE OF THIS DISPUTED INFORMATION, IS A VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS, AND A VIOLATION OF THE PLAIN LANGUAGE OF THE PAROLE COMMISSION & REORGANIZATION ACT 18 USC § 4201 ET SEQ; VARGAS V. U.S. PAROLE COMMISSION, 865 F.2d 191) (CA 9 1988); ANDERSON V. U.S. PAROLE COMMISSION, 793 F.2d 1126 (CA 9 1986).

COMMISSIONER KOSTBAR'S INTERIM HEARING REPORT (RESPONDENTS ANSWER, EX# 4) IS RIFE WITH FACTUAL ERROR'S, FABRICATIONS, MISQUOTES, AND IS UNRELIABLE, AND SHOULD BE EXPUNGED FROM PETITIONER'S RECORDS. PETITIONER MOVES FOR A EVIDENTIARY HEARING ON THE KOST-BAR INTERIM HEARING REPORT TO CONTRAST IT'S INACCURACIES AGAINST THE INTERIM HEARING VERBATIM RECORD (TAPE RECORDING), IF THE COURT INTENDS TO USE KOSTBAR'S REPORT IN ANY CAPACITY.

PETITIONER ADDITIONALLY CITES THE FOLLOWING ERROR'S IN THE KOSTRAR INTERIM HEARING REPORT:

1.) Pg. 2, Paragraph 4, "IT APPEARS THE MURDER OF THIS VICTIM WAS FOR THE PURPOSE OF SILENCING A WITNESS\VICTIM"; (CONTRAST THIS WITH THE INITIAL PAROLE HEARING REPORT OF COMMISSIONER DWYER, [RESPONDENTS ANSWER, EX. #1, Pgs. 1-2, INCIDENT AROSE DUE TO GAMBLING DEBT; DECEDENT THREATENED PETITIONER WITH BODILY HARM (I.E. DEATH); PETITIONER COMMITTED SELF DEFENSE]).

(NOTE: COMM. DWYER'S REPORT IS ALSO INACCURATE IN MANY AREA'S [I.E, Pgs. 2-3, EVALUATION: "THE SUBJECT WAS A MEMBER OF THE ARYAN BROTHERHOOD, AND BOTH HIS OWN STATEMENT INDICATES THAT HE WAS RUNNING A GAMBLING GAME FOR THE ARYAN BROTHERHOOD".] THIS IS COMPLETELY FALSE. THE GAMBLING GAMES WERE NOT ARYAN BROTHERHOOD. ADDITIONALLY THEY FAIL TO STATE THAT THE DECEDENT WAS A ARYAN BROTHERHOOD MEMBER.) PETITIONER IS UNABLE TO ILLUSTRATE COMM. DWYER'S INITIAL HEARING REPORTS MIS-STATEMENT OF FACTS, BECAUSE COMM. DWYER ERASED THE ENTIRE HEARING VERBATIM (TAPED) RECORD, IN VIOLATION OF PAROLE COMMISSION REGULATIONS (Supra).

2.) KOSTRAR INTERIM HEARING REPORT, Pg. 2, PARA. 5, "... He (PETITIONER) WAS THEREFORE DESIGNATED TO SERVE HIS TIME AT USP MARION AND WAS THE MARION CONTROL UNIT". THIS IS A MIS-CHARACTERIZATION OF THE FACTS: PETITIONER WAS NOT DESIGNATED TO SERVE HIS MINNESOTA STATE SENTENCE IN THE CONTROL UNIT.

3.) KOSTRAR INT. HEG., Pg. 3, PARA. I, THAT PETITIONER SUPPLIED MULTIPLE TIMES, WRITTEN STATEMENTS OF ASSISTANCE, WHICH THE COMMISSION HAS VIEWED THESE CLAIMS IN THE PAST AND THE CLAIMS HAVE BEEN FOUND NOT CREDIBLE. THIS IS INACCURATE, THE COMMISSION DID NOT VIEW THESE IN THE PAST (SEE: RESPONDENT ANSWER, EX. #6, REASONS,

— 13 —

PARA. 3, LINE 7-8, "YOU PROVIDE NO ADDITIONAL
INFORMATION BUT ASK THE BOARD TO LOOK TO
YOUR PAROLE FILE FOR THIS INFORMATION".

4.) KOSTBAR INT. RPT., PG. 3, PARA. 6,
"CODEFENDANTS: NONE". PETITIONER HAS A CO-
DEFENDANT ON THE CURRENT OFFENSE; (SEE: SAME
KOSTBAR INT. RPT., PG. 2, PARA'S 3, 4 (LINES 2-3, PARA.
3; LINES 4-5, PARA. 4) SEE ALSO: COMM. DWYER
INITIAL HEARING REPORT, RESPONDENTS EX.* 1, AT:
CO-DEFENDANTS: RONNIE JO CRISWELL.

5.) KOSTBAR INT. RPT., PG. 3, PARA. 9 (LAST), LINE
2; "HE HAS STARTED 'BRUTUS' (NO, 'BUDDHIST') PRO-
GRAM"... SAME PARA, LAST LINE:"... WITH NO
TERRORIST IN FLORENCE, CO. (NO, WITH TERRORISTS)
AND PETITIONER ACQUIRING INTEL FROM HIS INTER-
ACTIONS, FORWARDED SAME TO FEDERAL GOVERNMENT
OFFICIALS IN WASHINGTON, D.C, (SEE: ATTACHED
EXHIBITS))..

6.) KOSTBAR INT. RPT., PG. 4, PARA. 2, "SUB-
JECT INDICATES THAT HE WILL BE A ASSET TO
THE COMMUNITY AND HE FEELS HE CAN WORK
WITH CHILDREN" (NO, WITH YOUTH IN GANGS TO GET
THEM OUT OF GANGS);

7.) KOSTBAR INT. RPT., PG. 4, PARA. 3, "SUB-
JECT BELIEVES THAT HE SHOULD BE (NO, "SHOULD NOT
BE) ASSESSED AND PUNISHED FOR ACTIONS IN THE
PAST AS THAT HAPPENED LONG AGO...".

8.) KOSTBAR INT. RPT. IS CITED AS 5 PAGES
TOTAL; PETITIONER ONLY RECEIVED 4-PAGES FROM
RESPONDENT.

PETITIONER (TAPE) of
The Interim Hearing will illustrate the reports inaccurate contents, and the fact that contrary to Comm. Kostbar's report statements of a full hearing, Kostbar during the hearing claimed it was only for retroactive application of regulatory changes (if any), and drastic changes, in petitioner's status (i.e. imminent death due to terminal disease), nothing else. Petitioner moves for a new initial parole hearing with all regulatory provisions and mandates observed and adhered to, including the statutory requirements of the parole Act 18 USC 4201 et seq., and all of petitioners due process rights to submit information into the hearing in support of petitioners readiness for parole, and a verbatim (tape recorded) record of the full hearing.

Petitioner moves this court for a evidentiary hearing on any and all facts and matters remaining in dispute.

---

2. Petitioner was denied credit on his federal sentence for time served on his Minnesota state sentence while in federal custody.

Respondent misunderstands this ground, petitioner has exhausted his administrative

— 15 —

REMEDY IN THIS MATTER WITH THE PROPER
AGENCY — THE U.S. PAROLE COMMISSION — (SEE:

RESPONDENTS ANSWER, EX. #3, REASONS, PARA. 1, LINES
1-2. PAGE 1: "IN RESPONSE TO YOUR CLAIM THAT YOU
HAVE NOT RECEIVED PROPER CREDIT FOR TIME IN CUSTODY,
YOUR CLAIM IS WITHOUT MERIT".

THIS EXHAUSTED PETITIONER'S ADMINISTRATIVE
REMEDY. PETITIONER CONTENDS THAT PURSUANT TO
U.S. PAROLE REGULATIONS 28 CFR 2.1 ET SEG., IF
THE U.S. PAROLE COMMISSIONER USES DISCIPLINARY
INFRACTIONS PETITIONER RECEIVED WHILE SERVING
HIS STATE SENTENCE IN FEDERAL CUSTODY PRIOR
TO THE ACTIVATION OF HIS CURRENT FEDERAL SEN-
TENCE, AND THE PAROLE COMMISSIONER USES THE
DISCIPLINARY INFRACTIONS AS A BASIS TO EXTEND PETITIONER
GUIDELINE RANGE BEYOND THE 48 MONTHS EXTENSION BE-
YOND THE PRESCRIBED RANGE.

RESPONDENT ALLEGES THAT THE AFORE-STATED
DISCIPLINARY REPORTS WERE NOT USED TO DE-
TERMINE THE PAROLE GUIDELINE RANGE. THIS
IS INACCURATE. (SEE: RESPONDENT'S ALLEGA-
TION AT "RESPONDENTS ANSWER", PAGES 11, LINES
20-28; PAGE 12, LINES 1-2).

THE PAROLE COMMISSIONER DWYER DID USE
THE DISCIPLINARY REPORTS PETITIONER RECEIVED
DURING HIS STATE TERM IN FEDERAL CUSTODY
AS PART OF THE DETERMINATION OF THE PAROLE
GUIDELINE RANGE. (SEE: RESPONDENTS ANSWER,
EX. #1, PAGE 4, SECTION: GUIDELINE USE: AT LINES
8-10: " IN ADDITION, YOU HAVE ENGAGED IN ASSAULT-
IVE BEHAVIOR, WHICH HAS NOT RESULTED IN CONVICTION
BUT HAS BEEN FOUND BY THE "DHO" (DISCIPLINE
HEARING OFFICIAL) DURING THE SERVICE OF YOUR
STATE SENTENCE IN FEDERAL CUSTODY AND YOUR A-
SSAULTIVE BEHAVIOR HAS BEEN DIRECTED AGAINST BOTH

— 16 —

FEDERAL PRISONS (SEE) AND STAFF" (SEE ALSO:
RESPONDENTS ANSWER, EX #2, NOTICE OF ACTION,
REASONS, LINES 13-15 (STATES VERBATIM, SAME).
EX.#3, COMM. ROSTRAR INTERIM HEARING REPORT, PG.3,
PARAGRAPH 5, LINES 6-9 (SAME); CLEARLY, IT
WAS USED.

PETITIONER MAINTAINS THAT THESE DISCIPLIN-
ARY INFRACTIONS CANNOT BE USED IN THE MANNER,
UNLESS PETITIONER IS ALSO CREDITED WITH THE
TIME SERVED (DURING INFRACTION PERIOD)(ON
THE STATE SENTENCE), ON THE TIME SERVED ON
THE FEDERAL SENTENCE, AS IT APPLIES TO TIME
SERVED AND CREDITED TOWARD THE GUIDELINES
THEMSELF. (SEE: RESCISSION GUIDELINES 28 CFR§2.36
ATTACHED AS EX.#24) (EX.#24 (A)(B) [#24 IS 3-PAGES
TOTAL]).

EXAMPLE. PETITIONER WAS CONVICTED BY DHO OF
ASSAULT WITH A WEAPON ON A INMATE IN 1980, THE
CRIMINAL CHARGES IN U.S. DISTRICT COURT WERE DIS-
MISSED WITH PREJUDICE. THE U.S. PAROLE COMMISSION
USES THE DHO ASSAULT TO EXTEND PETITIONERS GUIDE-
LINE RANGE BY 60-72 MOS (CATAGORY 5 [ASSAULT OFF-
ENSE, SUBCHAPTER B, 212 (b)]). 72 MOS IS 6-YEARS.
GUIDELINE RANGE EXTENSION. DHO CONVICTION IS 2 YEAR
THIS IS A 15-YEAR CREDIT (1980 TO 1995 [1995 IS 2)EAR
FEDERAL TERM BEGAN]); PERIOD 1995 TO 2005 (10-YEARS
SERVED TO ELIGIBILITY FOR PAROLE = A TOTAL OF 25
YEARS ALREADY SERVED ON FEDERAL TERM.
SEE: RECISION GUIDELINES §2.36; SEE ALSO:
2.20-01. PURPOSE OF GUIDELINES. A, "FROM THE
PAROLE COMMISSION AND REORGANIZATION ACT, PUBLIC
LAW 94-233, 18 USC 4201 ET SEQ; SEE: § 18 USC
4206 PAROLE DETERMINATION CRITERIA", B. FROM
JOINT EXPLANATORY STATEMENT OF THE COMMITTEE
CONFERENCE, EX # 25; AND CONFERENCE STATEMENT
INSTITUTIONAL MISCONDUCT, PARAGRAPH 8: SPECIFIED
INSTANCE OF INSTITUTIONAL MISCONDUCT. (CONFEREE'S
REFER TO RESCISSION GUIDELINES, AT § 2.36.
SEE: EX.# 26.

WHEREFORE PETITIONER CONTENDS THAT UNDER THE PAROLE COMM, ACT 18 USC 4201 ET SEq, AND THE PAROLE COMMISSION REGULATIONS, He is ENTITLED TO CREDIT ON His FEDERAL SENTENCE, "AS IT APPLIES TO THE PAROLE GUIDELINES" AND PETITIONER'S PLACEMENT ON SAME, WHEN THE U.S. PAROLE COMMISSION USES DISCIPLINARY INFRACTIONS DURING PETITIONERS STATE SENTENCE SERVED IN FEDERAL CUSTODY, WHEN THE INFRACTIONS ARE USED TO SET THE GUIDELINE RANGE, AS IN PETITIONERS CASE BEFORE BAR.

ADDITIONALLY, PETITIONER HAS EX-HAUSTED His AVAILABLE ADMINISTRATIVE REMEDY IN APPEALING THIS ISSUE TO THE U.S. PAROLE COMMISSION, WHICH IS THE PROPER AGENCY TO APPEAL THE MATTER TO, NOT THE FEDERAL BUREAU OF PRISONS, WHICH HANDLES "NORMAL" SENTENCE CREDIT APPEALS.

WHEREFORE — PETITIONER MOVES THIS COURT TO GRANT THE STATE TIME CREDIT TOWARD His FEDERAL SENTENCE AND His GUIDELINE PLACEMENT BASED ON DISCIP-LINARY INFRACTIONS DURING THE STATE SEN-TENCE IN FEDERAL CUSTODY.

PETITIONER MOVES THIS COURT FOR A EVIDENTIARY HEARING ON ALL FACTUAL ISSUES IN DISPUTE.

RESPECTFULLY SUBMITTED —

JOHN GRESCHNER #VJ2545
ASU-161L, CSATF)SP
P.O. BOX 5248
CORCORAN, CA.
93212

DATED: 4-20-2008

C.C. FILE.

— 18 —

# Proof of Service

I, PETITIONER JOHN GRESCHNER PRO SE
HEREBY SWEAR THAT I SERVED A TRUE
COPY OF PETITIONER "TRAVERSE" ON THE
RESPONDENTS COUNSEL, SHOWN BELOW,
ON THE DATE SHOWN BELOW.

RESPONDENT COUNSEL:
PHILLIP A. TALBERT
A.U.S.A.
501 I STREET, STE 10-100
SACRAMENTO, CA. 95814

ON DATE: 4-21-2008

JOHN GRESCHNER
#V12545
ASU-161L
(SATF) SP
P.O. BOX 5248
CORCORAN, CA.
93212

C.C. FILE.

- 19 -

TO: U.S. DEPT. OF JUSTICE                                    FEB. 21, 2006.
    UNITED STATES PAROLE COMMISSION
    5550 FRIENDSHIP BOULEVARD
    CHEVY CHASE, MARYLAND
    20815-7201                            

RE: COPY OF HEARING
    TAPE RECORDING FOR APPEAL.

    Dear Parole Commission- My best greetings and regards to you, I hope
that this finds you well in health and spirits.

    Please send to me the tape recordings, of my parole hearing which was
held on july 26, 2005; additionally, please send me a copy of my appeal of
the parole hearing/commission, and also please send me a copy of the in-
formation that I had submitted for consideration by the parole board,
which is a total of approximately 5-pages.

    I request the aforestated materials, pursuant to the parole commission
guidelines sections § 2.13 (f), and § 2.56 (b)(1) request for the hearing
tape recording, and other parole file materials; and (e) hearing record is
to be made available.

    I request same, due to my appeals that're ongoing regarding same. thank
you for your time and assistance in this important matter.

                            Sincerely---

                            JOHN GRESCHNER
                            #V-12545
                            CSATF/SP
                            D-1-130-U
                            P.O. BOX 5242
                            CORCORAN, CA.
                            93212

C.C. FILE.

paragraph (b) or (e). If the Regional Commissioner does not concur, the panel recommendation is voided and the case will be scheduled for hearing under standard procedure.

(b) Where parole is granted upon completion of the minimum sentence, add to each Notice of Action following the "reasons" section: *"Note: The Commission has decided to grant you a parole date upon completion of your minimum sentence on the basis of a review of your record. As the Commission is precluded by law from releasing you at an earlier time, this release date is NOT APPEALABLE."*

(e) Where parole is granted within nine months of the date of the pre-hearing review and the parole eligibility date will have already passed, add to each Notice of Action following the "reasons" section: *"Note: Under 18 U.S.C. 4208(a), the Commission has decided to grant you an effective parole date on the basis of a review of your record without a personal hearing."*

■ 2.12-04. *Mixed Parolable and Non-Parolable Sentences.* An initial hearing will be held within 120 days of a prisoner's arrival at a federal institution or as soon thereafter as practicable in the case of a prisoner with a non-parolable sentence that precedes a parole-eligible sentence, unless the parole eligible date on the parolable sentence plus the mandatory release date on the non-parolable sentence establishes a period of parole ineligibility often years or more. If the period of parole ineligibility is ten years or more, an initial hearing will be held nine months prior to the parole eligibility date or as soon thereafter as practicable.

## ■ §2.13 INITIAL HEARING; PROCEDURE.

(a) An initial hearing shall be conducted by a single hearing examiner unless the Regional Commissioner orders that the hearing be conducted by a panel of two examiners. The examiner shall discuss with the prisoner his offense severity rating and salient factor score as described in §2.20, his institutional conduct and, in addition, any other matter the examiner may deem relevant.

(b) A prisoner may be represented at a hearing by a person of his or her choice. The function of the prisoner's representative shall be to offer a statement at the conclusion of the interview of the prisoner by the examiner, and to provide such additional information as the examiner shall request. Interested parties who oppose parole may select a representative to appear and offer a statement. The hearing examiner shall limit or exclude any irrelevant or repetitious statement.

(c) At the conclusion of the hearing, the examiner shall discuss the decision to be recommended by the examiner and the reasons therefor, except in the extraordinary circumstance of a complex issue that requires further deliberation before a recommendation can be made. Written notice of the decision shall be mailed or transmitted to the prisoner within 21 days of the date of the hearing, except in emergencies. Whenever the Commission initially establishes a release date (or modifies the release date thereafter), the prisoner shall also receive in writing the reasons therefor.

(d) In accordance with 18 U.S.C. 4206, the reasons for establishment of a release date shall include a guidelines evaluation statement containing the prisoner's offense severity rating and salient factor score (including the points credited on each item of such score) as described in §2.20, as well as the specific factors and information relied upon for any decision outside the range indicated by the guidelines.

(e) No interviews with the Commission, or any representative thereof, shall be granted to a prisoner unless his name is docketed for a hearing in accordance with Commission procedures. Hearings shall not be open to the public.

(f) A full and complete record of every hearing shall be retained by the Commission. Upon a request, pursuant to §2.56, the Commission shall make available to any eligible prisoner such record as the Commission has retained of the hearing.

*Notes and Procedures*

. ■ 2.13-01. *Examiner Functioning.*

(a) Examiners conduct hearings at the institution of confinement according to a printed schedule. The appropriate Case Manager is also in attendance. A recording device is used to record the interview.

(b) The hearing summary is dictated following each hearing. Except where the case is "continued to the Commission's Office" for some unusual reason, the summary includes a recommendation relative to parole, revocation, or continuance. At the conclusion of the h e a r i n g, the prisoner (and his representative) is informed of the examiner recommendation (and the fact that his recommendation is subject to review by the Regional Commissioner). If there is a split recommendation (when two examiners are present), the prisoner is told the altern at i v e re co mmendations (examiners need not be identified by recommendation). In original jurisdiction cases, the prisoner is told the alternative recommendation.

■ 2.13-02. *Representation.*

(a) Representation is normally limited to one person. However, it is within the hearing examiner's discretion, where appropriate, to permit additional representatives to appear. Any continuance due to the absence of a prisoner's representative shall be at the discretion of the hearing examiner and shall be granted only for good cause. A brief memo to the file is prepared.

(b) At local or institutional revocation hearings, a person other than an attorney (Member of the Bar) shall be limited to the role of a witness or representative except that where permissible by state law, a law student may function in the role of an attorney provided (i) the inmate knowingly and intelligently consents; and (ii) the law student is under the direct supervision of a member of the bar (who is physically present). However, representation by both law student and supervisor shall not be permitted. An attorney or other representative at any other hearing shall be limited only to the role of representative as previously defined.

(c) The prisoner and his representative will normally be entitled to be present during the entire hearing except during deliberations of the decision-makers, or where institutional security would be jeopardized and/or personal safety of adverse witnesses might be involved. If the prisoner is removed at the request of the hearing examiner, the reasons for such exclusion from t h e hearing must be well documented into the record. A prisoner's representative will also be allowed to be present when the examiner informs the prisoner of the recommendation and reasons regardless of the type of hearing.

(d) In cases where (1) the witness will be unavailable, (2) wishes to give testimony containing matters exempt under the statute, or (3) the testimony of the witness would be adverse in nature and the witness does not wish, for proper grounds, to give the testimony in the presence of the prisoner, the prisoner may be remo v ed from the hearing, or in the alternative the witness may offer a written statement to be used by the hearing examiner during his deliberations. If at all possible; this written statement should be submitted by the witness well in advance of the hearing.

(e) If the written statement so offered contains exempt material, and the witness represents a government ag e n cy, it is the duty of that witness to determine what material is exempt and to summarize that material for the benefit of the prisoner. If the witness is a pri v ate person, the Commission will perform that task in advance of the hearing. Where the material is submitted directly to the hearing examiner, the summary will be given to the prisoner along with his Notice of Action.

(f) Pursuant to 28 C.F.R. 2.55(a)(3), upon the prisoner's request, a representative shall be given access to the presentence investigation report reasonably in advance of an initial hearing, interim hearing, or a fifteen-year reconsideration hearing, pursuant and subject to the regulations of the Bureau of Prisons. Disclosure shall not be permitted with respect to confidential material withheld by the sentencing court under Rule 32(c)(3)(A ). Bureau of Prisons personnel are responsible for implementing the above procedure. Note: This procedure does not apply to rescission or revocation hearings.

(g) *Reporter or Recording Device.* Reporter or recording devices brought in by the prisoner or his attorney/representative are not permissible.

■ 2.13-03. *Computation of guidelines.* The guidelines evaluation worksheet will be completed at all initial hearings.

■ 2.13-04. *Provisions of Reasons.* Reasons following the appropriate guideline format will be typed on all Notices of Action denying a parole date or granting a presumptive or effective parole date. However, repetition of the reasons already given is not required (a) when an effective date is granted as a result of a pre-release review of a previous presumptive date order and the date of release has not been changed; and (b) on any other Notice of Action where no change in the previous decision is made.

■ 2.13-05. *Language.* In preparing correspondence, hearing summaries, reports and other documentation, use professional language which describes the subject and explains the Commission's position clearly, simply, and accurately. It should be kept in mind that much of what is written is disclosable to the prisoner or releasee and may come before the Courts, the Congress, or

Before referring these documents to the Bureau of Prisons (BOP), the Commission will ask the requester whether he also wants the BOP documents in his parole file processed.

(1) Requests that are only for a copy of the tape recording of a hearing will be processed ahead of requests seeking multiple documents from the Parole Commission file. (priority processing). A requestor may limit the scope of the request to a tape recording only (or to a tape recording and/or up to two documents) and thereby qualify for priority processing. For example, a request for a tape recording and the examiner's summary qualifies for priority processing.

(2) [Reserved]

(c) *Exemptions to disclosure*. A document or segregable portion thereof may be withheld from disclosure to the extent it contains material exempt from disclosure under the Freedom of Information Act. 5 U.S.C. 552(h)(1)-(9).

(d) *Specification of documents withheld*. Documents that are withheld pursuant to paragraph (c) of this section shall be identified for the requester together with the applicable exemption for withholding each document or portion thereof. In addition, the requester must be informed of the right to appeal any non-disclosure to the Office of the Chairman.

(e) *Hearing Record*. Upon request by the prisoner or parolee concerned, the Commission shall make available a copy of any verbatim record (*e.g.*, tape recording) which it has retained of a hearing, pursuant to 18 U.S.C. 4208(f).

(f) *Costs*. In any case in which billable costs exceed $14.00 (based upon the provisions and fee schedules as set forth in the Department of Justice regulation 28 C.F.R. 16.10), requesters will be notified that they will he required to reimburse the United States for such costs before copies are released.

(g) *Relation to other provisions*. Disclosure under this section is authorized by 28 C.F.R. 16.85 under which the Parole Commission is exempt from the record disclosure provisions of the Privacy Act of 1974, as well as certain other provisions of that Act pursuant to 5 U.S.C. 552a(j)(2). Requests submitted under the Freedom of Information Act or the Privacy Act for the requester's own records will be processed under this section. .In no event will the Commission consider satisfaction of a request under this section, the Freedom of Information Act, or the Privacy Act of 1974, to he a prerequisite to an adequate parole hearing under 18 U.S.C. 4208 (for which disclosure is exclusively governed hy §2.55 of this part) or to the exercise of a parole applicant's appeal requests under 18 U.S.C. 4215. Provisions of the Freedom of Information Act not specifically addressed hy these regulations (including the reading room) are covered by 28 CFR, part 16, subpart A.

(h) *Appeals*.

(1) *Appeals to the Chairman*. When a request for access to U.S. Parole Commission records or a waiver of fees has been denied in whole or in part, or when the Commission fails to respond to a request within the time limits set forth in the FOIA, the requester may appeal the denial of the request to the Chairman of the Commission within thirty days from the date of the notice denying his request. An appeal to the Chairman shall be made in writing and addressed to the Office of the Chairman, U.S. Parole Commission, 5550 Friendship Boulevard, Chevy Chase, Maryland 20815.

(2) *Decision on Appeal*. A decision affirming, in whole or in part, the denial of a request shall include a brief statement of the reason or reasons for the affirmance, including each FOIA exemption relied upon and its relation to each record withheld, and a statement that judicial review of the denial is available in the U.S. district court for the judicial district in which the requester resides or has his principal place of business, the judicial district in which the requested records are located, or in the District of Columbia. If the denial of a request is reversed on appeal to the Chairman, the requester shall be so notified and the request shall be processed promptly by Commission staff in accordance with the Chairman's decision on appeal.

(i) *Expedited processing of Requests*.

(1) The Commission will provide expedited processing of a request when a requester has demonstrated a compelling need as defined in this section and has presented a statement certified by such person to be true and correct to the best of such person's knowledge and belief. A requester may demonstrate "compelling need" by establishing one of the following:

CERT # 24623567 (2) 11-6-99

EX# 5

TO: U.S. SENATOR PAUL WELLSTONE

ATTN: MARY

RE: VERY SENSITIVE\ HIGHLY CON-
FIDENTIAL INFORMATION.

DEAR SENATOR WELLSTONE —
MY BEST GREETINGS AND
REGARDS TO YOU, YOUR FAMILY,
MARY, AND ALL AT YOUR OFFICE.
I HOPE THIS FINDS YOU ALL
WELL IN HEALTH AND SPIRITS.

I AM BRINGING THIS VERY
SERIOUS MATTER TO YOUR
ATTENTION, AS I CANNOT TRUST
THE FED. BUREAU OF PRISONS
IN ANY FASHION OR CAPACITY
(TOO MANY LIES, OBSTRUCTION
OF JUSTICE, MAIL THEFT, AT-
EMPTS TO POISON ME ETC., ETC)
AND NEITHER THE U.S. DEPT.
OF JUSTICE, NOR THE F.B.I.
ARE RESPONSIVE (IN TRUTH, I
DON'T KNOW IF MY RECENT
LETTERS TO THEM HAVE EVEN
LEFT THIS FACILITY), SO I AM
SENDING THIS INFORMATION TO
YOU.

AS YOU WELL KNOW, I HAVE
BEEN ATTEMPTING TO CORRECT
ILLEGALITIES AND INJUSTICES
BY FILING LEGAL ACTIONS (FOR-
MAL ADMINISTRATIVE REMEDIES,
TORT CLAIMS ETC) AS I BE-
LIEVE THIS TO BE THE PROPER

Pg. 2 \ Sen. Wellstone \ S. Greschner
#02550-135

# 4 64   9-6-99

Method of Rectifying The Problems (Though as ineffective as it has been to date), but there are many others who do not share my faith in The legal methods.

Approximately 70 days ago I became aware of a conspiracy. The object of The conspiracy is to kill Federal Bureau of Prison officials. Initially, The means toward This end was to attack Them with prison weapons (Knives, zip guns etc) around The Federal Prison System (in various facilities).

Apparently, a little more thought was given to the matter, and it was decided that a better approach is from The outside (The streets) using explosive devices (Vehicle Bombs and Mail Bombs).

I was made aware of both methods at the same time (Prison weapons, Then The switch to explosive devices), as a individual in The conspiracy itself (I am not a member of The conspiracy, but I have been in Prison a long time, and Know many People) approached me on the instructions of fellow co-conspirators superior to Him (These People know me), informed me of what was Happening, and asked

Pg-3\ Sen. Wellstone\ J. Greschner
#00550-135
#44                  9-6-99

me for Technical Assistance
(Construction of firing Circuits
for the Various Devices). This
Individual Informed me That
They have The general "Know
How", But felt I was more
Knowledgable Technically, As
I Have Studied Various Subject
Matters (electronics, Chemistry
etc). I told Him To Let me
Think This matter over. I App-
roached others, who The first
Individual Stated Were in The
Plot, And To Whom I was To
give The firing Circuit Schematics
To, And Inquired As To Whether
They Were Serious About This,
And They stated Yes. I Told Them
To let me think it over, But
To not Tell The first Individ-
ual Anything more About me
(I did'n Tell Him, He's A
Con Artist), Nor To mention
my Name In Connection With
This Conspiracy To Any other
of Their members (Clearly There
Are others involved, Beyond This
facility).
        Approximately Two Weeks
later, I gave Them Tweezed
firing Circuits, Both in Ink on
Paper (To Check out And Then
Destroy — As They Could'nt
Leave Bomb Circuits Laying A-
Round Their Cells), And I in
Books (Written in Invisible
Ink on A Book Page). Approxi-

Pg. -4\ Sen. Wellstone \ J. Greschner
# 64
# 00550-135
9-6-99

---

mately a week later I sent a-
nother individual in the plot
a message, and a week after
that another message explaining
I did what he asked, and sent
him a tweeded firing circuit
(He too wanted one for others)
Then I gave the first individual
a encrypted message to send
to his co-conspirator (encrypted
as I didn't trust the con man)
telling him where to find the
other two messages I sent.

I do not know the time
frame on this conspiracy, or
all the players (some are in
prison, some very near re-
lease from prison, and some
are on the streets).

I do know general tar-
gets mentioned; Central office
of the BOP in D.C.; the N.C.
R.O. of BOP in Kansas City
(vehicle bombs on these); and
assorted mail bombs to var-
ious BOP officials.

It is important for you to
know that I am placing myself
in a position of serious risk
by writing this to you, not only
to my life, but also the loss
of evidence. You cannot in-
form the BOP of this, as there
are too many leaks, and with in
the same day it would be known
I have written this to you, placing
me in danger, and evidence would

Pg-5\ Sen. Wellstone\ J. Greschler
#C2550-135
# 64                    9-6-99

BE LOST. You Cannot Inform
THE F.B.I. (Locally In Colorado)
for THE Same Reasons. Nor, Can
THE F.B.I. Visit Me In THis Fa-
cility, As it Would Be Well Known
Within THE Hour THat F.B.I. Were
Visiting Me, WHich Would Result
In Evidence Lossage. (THis Fa-
cility Has So Many Leaks, its
Astonishing THE Place is Still
Above Ground). THE Safest Move
is for THE F.B.I. (or WHichever
Agency Handles Bombings) To
Call THis Facility As A Law Firm
And Arranged A Confidential
Attorney Client Telephone Call
With Me (its Suppose To Be Con-
fidential — But THE BOP is Al-
ways Violating THat too).

     I Have Given A Lot of THought
To THis, I Don't Like Feeling
Like A Fucken Rat (I've Been In
Prison Over 30 Yrs Straight,
And I've Never Told on Any-
one or THing) But THis is No
Light Matter. I Have No Sym-
pathy for THE BOP, As Dirty As
THey Have Been To Myself And
Many Others. WHat I Do Know,
Is THat Explosive Devices Are
Indiscriminant, THey Will
Kill And Maim Anyone or
THing At Ground Zero, WHether
it is THE Target or Not, And
THis Translates Into A Lot of
Innocent Lives Being Lost
or Irredaparily Changed For

R - 6) SEN. WELLSTONE/ J. GRESCHNER
#02550 - 135
# 64          9-6-99

THE WORSE. THATS ANGER WHICH
HAS BECOME IRRATIONAL RAGE,
AND I'M NOT WITH IT.
    I APOLOGISE FOR BURDENING
YOU WITH THIS, BUT I COULD
SEE NO OTHER WAY. THE BOP
IS STEALING AND TAMPERING
WITH MY MAIL SO HARD, I DON'T
KNOW IF YOU'LL EVEN RECEIVE
THIS, SO PLEASE ACKNOWLEDGE
RECEIPT OF THIS COMMUNICATION.
    I WILL KEEP YOU, MARY AND
YOUR OFFICE OUT OF THIS MESS,
SO THAT YOU PEOPLE WILL NOT
EXPERIENCE ANY NEGATIVE FALL -
OUT - - -

    STAY WELL AND KEEP THE FAITH -


        SINCERELY -



        JOHN GRESCHNER
        #02550 - 135
        P.O. BOX 8500
C.C. FILE.        FLORENCE, CO.
                81226 - 8500

TO: KATHERINE HAWKE - SAWYER
DIRECTOR - FED. BUREAU OF PRISONS

DEAR DIRECTOR — MY BEST GREETINGS AND
REGARDS TO YOU, I HOPE THIS FINDS YOU
WELL IN BOTH HEALTH AND SPIRITS...
       I AM WRITING THIS LETTER TO YOU, AS
I DO NOT BELIEVE THAT YOU FULLY APPRE-
CIATE THE POSITION CIRCUMSTANCES HAVE CAST
ME INTO, IN A ATTEMPT TO CORRECT PER-
CEIVED INJUSTICES, MINIMIZE CONFLICTS,
AND TO PRESERVE HUMAN LIFE (BOTH PRISON-
ERS AND B.O.P. EMPLOYEE'S) WHICH HAS RE-
SULTED IN MYSELF AND MY FAMILY BE-
ING PLACED DIRECTLY IN HARMS WAY...
       EVERYTHING I HAVE FILED WITH THE
B.O.P. (ADMINISTRATIVE REMEDIES; TORT CLAIMS
ETC) IS NOT ONLY TRUE, BUT I WAS AT-
TEMPTING TO CORRECT INEQUALITIES, AND
MINIMIZE PHYSICAL CONFLICTS, WHICH HAVE
BEEN PREVALENT WITHIN THE B.O.P., AND
THEREBY PRESERVE HUMAN LIFE --- THIS
HAS NOT BEEN EFFECTIVE, BUT WORSE, THERE
ARE THOSE WHO DO NOT SHARE MY FAITH
IN THE LEGAL PROCESSES TO RECTIFY
PERCEIVED WRONGS, AND HAVE CHOSEN A
PATH OF DIRECT ATTACK UPON THE PERCEIVED
WRONGDOERS (B.O.P.), WHICH WILL RESULT
IN A MASSIVE LOSS OF LIFE AND THE
SEVERE MAIMING OF MANY PEOPLE ...

Case 1:06-cv-00295-CW   Document 15   Filed 04/24/08   Page 31 of 82

#7

I'm sure That You Are Now Aware of
The Ongoing Conspiracy To Attack BOP Fac-
ilities And Personell With Both Vehicle,
And Parcel (Letter) explosive Devices —
Which Said Conspiracy I Subsequently
exposed Upon my Becoming Aware of
its existence... I Assure You, This is
Not A matter To Be Taken Lightly, Nor
Has my exposure Ceased its existence,
it Has Simply Driven it Underground
A Little Deeper, And Caused A Fragmen-
tation of The Conspirators, from A Unit
To A Series of Lone Bombers... I Have
Spoken To Both The F.B.I., And BOP em-
ployee's, Naming Individuals Involved
And Where evidence Can Be found, But
I Do Not Know If They Have Taken App-
ropriate Actions To Collect The Availa-
ble evidences... This is Very Disturbing
If This Results In Loss of Life, Remem-
ber, I gave All Parties fore Warning...
I Hope I Have Not Placed myself And my
family In Jeopardy, To No Avail...

                    Sincerely —
L.C. File.          John Greschner
                    #02550 - 135
                    P.O. Box 1000
                    Leavenworth, Ks.
                    66048



**U.S. Department of Justice**

Federal Bureau of Investigation

*Washington, D.C. 20535*

October 8, 1999



Honorable Paul David Wellstone
United States Senator
417 Litchfield Avenue, SW
Willmar, MN  56201

Dear Senator Wellstone:

Your September 22nd correspondence on behalf of
Mr. John Greschner has been received.  Mr. Greschner furnished
information involving a conspiracy to kill Bureau of Prisons
personnel.

We appreciate your forwarding this information to the
FBI.  I have passed it on to our investigators for appropriate
action.

Sincerely yours,

A. Robert Walsh
Legislative Counsel
Office of Public and
    Congressional Affairs

PAUL D. WELLSTONE
MINNESOTA

MINNESOTA TOLL FREE NUMBER:
1-800-642-6041

COMMITTEES:
LABOR AND HUMAN RESOURCES
SMALL BUSINESS
INDIAN AFFAIRS
VETERANS' AFFAIRS
FOREIGN RELATIONS

# United States Senate

WASHINGTON, DC 20510-2303

October 20, 1999

Mr. John Greschner
#02550-135
P.O. Box 8500 - A.D.X.
Florence, CO   81226-8500

Dear Mr. Greschner:

The Federal Bureau of Investigation has responded to my inquiry
on your behalf. A copy of the response is enclosed.

If I can be of further assistance to you in the future, please do
not hesitate to contact me.

Sincerely,

Paul

Paul David Wellstone
United States Senator

PDW:mer

Enclosure

☐ HART SENATE OFFICE BUILDING
WASHINGTON, DC 20510-2303
(202) 224-5641

☐ 2550 UNIVERSITY AVENUE, WEST
COURT INTERNATIONAL BUILDING
ST. PAUL, MN 55114-1025
(651) 645-0323

☐ POST OFFICE BOX 281
105 2d AVENUE, SOUTH
VIRGINIA, MN 55792
(218) 741-1074

☒ 417 LITCHFIELD AVENUE, SW
WILLMAR, MN 56201
(320) 231-0001

PRINTED ON RECYCLED PAPER





United States Government

memorandum

Federal Correctional Complex
Legal Department
Florence, Colorado 81226

DATE: February 22, 2000

REPLY TO
ATTN OF: Michael Real, Paralegal

SUBJECT: **Tort Claim Number: T-NCR-99-758**
**Inmate: John Greschner, 02550-135**

TO: Nancy Culbertson, Legal Instruments Examiner
USP, Leavenworth, Kansas

Inmate __John Greschner__ , Register Number. __02550-135__ , filed the above referenced
tort claim seeking monetary compensation in the amount of $3,381.50 for the alleged
loss and/or destruction of legal and/or religious materials.

On February 18, 2000, I contacted inmate Greschner regarding his tort claim. Inmate
Greschner indicated that after he filed his tort claim, all of his property was returned to
him. After having received, and signed for his property, he noticed that the only thing
missing from his property was a letter he drafted to the Federal Bureau of Investigation
which outlines issues as they pertain to the bombing conspiracy. Inmate Greschner is
not seeking compensation for the letter and places no monetary value on the letter
since he is capable of re-drafting the letter. Inmate Greschner is only concerned of its
whereabouts and wishes to bring this issue to the attention of staff.

Based on the foregoing, inmate Greschner no longer wishes to pursue this tort claim
and therefore requests it be rescinded. By his signature below, inmate Greschner
certifies that his withdrawal of this tort claim is strictly voluntary and is not the result of
any influence and/or coercion on the part of any Bureau of Prisons staff member. By
his signature, inmate Greschner further certifies that his signature is given freely and
without the promise of receiving anything of value in exchange for his signature below.

Claimant's signature                                          2 - 22 - 2000

                                                                      Date



**U.S. Department of Justice**

**Jackie N. Williams**
United States Attorney
District of Kansas

*444 Quincy*                                    *Wichita Office*
*Suite 290*                                  *1200 Epic Center*
*Topeka, Kansas 66683-3592*                        *301 N. Main*
                                         *Wichita, Kansas 67202-4812*

*TEL (785) 295-2850*
*FAX (785) 295-2853*                       *Kansas City Office*
*TDD (785) 295-7673*                        *500 State Avenue*
                                                *Suite 360*
                             *Kansas City, Kansas 66101-2433*

November 9, 1999

Mr. John Greschner
Reg. No. 02550-135
U.S. Penitentiary-Max
P.O. Box 8500
Florence, CO 81226-8500

Dear Mr. Greschner:

I am in receipt of your letter dated 10/31/99. Thank you for the proffer contained in that letter. We plan to indict David Sahakian in December of 1999 on drug conspiracy charges. We are in the process of evaluating the information you provided to see where it will fit into the prosecution of Mr. Sahakian.

I was pleased with your testimony in the McElhiney trial, although I did not know exactly what it would be until we started asking the questions. The information you provided was corroborated to a large extent by other information already in our possession.

There remains to be resolved the issue of what sort of credit your will receive for your assistance. I am open to any realistic suggestions you might have. Don't tell me you want to be released from jail any time soon because that isn't going to happen. We would certainly do whatever we could to improve your conditions of confinement. I will wait to hear from you regarding any suggestions you might have.

If you have any further questions please don't hesitate to contact me.

Sincerely,

T.G. Luedke
Assistant U.S. Attorney
District of Kansas

TO: TEXAS DEPT. OF PUBLIC
SAFETY, P.O. BOX 4087,
AUSTIN, TX., 78773-0001,

CERT. MAIL\RETN RECPT
# Z 140 219 139

MAILED ON —
5-30-2000

AND TEXAS STATE GOVERNOR,
GEORGE W. BUSH, STATE CAPITOL BLDG.,
AUSTIN, TX., 78711.

#11

DEAR GOV. BUSH AND T.D.P.S. — BEST
GREETINGS AND REGARDS, I HOPE
THIS FINDS YOU WELL IN HEALTH AND
SPIRITS...
ADVISORY: ENCLOSED HEREWITH PLEASE
FIND —
1.) LETTER TO U.S. SEN. WELLSTONE,
3-20-2000, 1-Pg
2.) LETTER TO U.S. ATTORNEY OFFICE,
3-19-2000, 12-Pg + 1 ADDENDUM
3.) LETTER TO U.S. SEN. WELLSTONE,
3-28-2000, 7-Pgs.
4.) LETTER TO ATTORNEY MARJORIE
MEYERS, F.P.D. (HOU) TX, 5-10-2000,
6-Pgs.
5.) LETTER TO U.S. ATTORNEY GENERAL
RENO, 5-7-2000, 7-Pgs.
6.) LETTER TO COURT CLERK, 5-29-00, 3-Pgs,
ADDITIONALLY, INFORMATIONS
AND DOCUMENTS STOLEN BY KEVIN
ROACH, GENE BENTLY, RICHARD BEZ-
NARD, BRIAN HEALY, DANNY WEEKS
AND PERHAPS OTHERS, FOR SALE, FIN-
ANCIAL SCAMS AND I.D. COUNTERFEIT-
ING, INCLUDES AT LEAST, THE NAMES,
ADDRESSES AND DM √*'s, OF 47

Pg-3( Gov. Bush + TDPS ) J. Greschner
#002550-135
5-28-00

TEXAS STATE CITIZENS, WHO Have
BEEN PLACED DIRECTLY IN HARMS
WAY, AND MUST BE WARNED OF THE
THREATS; WHICH IS WHY I Am Appris-
ING You AS THE GOVERNOR OF TEXAS,
AND, THE TEXAS DEPT. OF PUBLIC SAFETY,
SO THAT You's CAN PROTECT Your CITI-
ZENS, AS I Am IN NO POSITION TO
DO SO --- HERE IS A PARTIAL LISTING
OF THE TEXAS STATE CITIZENS; ONCE
You RECEIVE SAME ( BOTH GOV. BUSH
AND T.D.P.S.) AND WRITE AND ADVISE
ME THAT You Have RECEIVED IT, I
SHALL SEND You THE REMAINDER OF
THE NAMES, ADDRESSES AND DMV#'s:
    1.) CANTU - JOSE GUADALUPE, DMV#
08286742, 35 COBBLESTONE, B. TX.
    2.) HOFFMAN - WILLIAM ALLEN, DMV#
06710571, 4905 HACKNEY, THE COLONY, TX.
    3.) PENA - HOMERO GARCIA, DMV# 1099
4236, P.O. BOX 161, LOZANO, TX.
    4.) REVAS - JAIME GONZALEZ, DMV# 070
11506, 1305 W. JOHNSON, HARLINGEN, TX.
    5.) ZUNO - RAUL GERMAN, DMV# 11220133,
3600 W. TC JESTER 24, HOU. TX.
    I Am DOING IT THIS WAY, SO I
KNOW THAT BOTH GOV. BUSH AND THE
TX DEPT PUB SAFETY HAVE RECEIVED THIS
INFO, ( THERE IS TOO MUCH MAIL THEFT
AND TAMPERING GOING ON HERE, IN A

P.3 / Gov. Bush & Tx. Dept. #00550-135
5-28-00

Attempt by the U.S. Dept. of Justice & U.S. BOP, to cover this major fiasco up. (You have no idea what I've had to deal with); If I do not receive a letter from both Gov. Bush and the Tx. Dept. Pub. Saf., advising they want the remainder of the info, I will not send it, for fear they have not received it --- Hey Gov. Bush, most of the James are Mexican-Americans, citizens of Texas, Also, the magnitude of this info in its entirety, is your election year "Willie Horton" --- I am sending this pkg. Certified mail \ Return receipt, # Z 140 219 139 (which is no guarantee), so please acknowledge receipt of the pkg, which I am placing in the mail on 5-30-2000, And I am maintaining copies of said communication for my records, legal action, and the news media's --- I am sending this to Tx Dept of Pub Safety, As I do not have the address to the Governor's office --- A public legal record of the illegalities (partially at least) is in the U.S. District Court, Denver, Colorado; the case of "John Greschner, Danny Weeks, Plaintiffs vs. Warden Pugh, Assoc. Warden Gallegos, S.I.A. John Doe, Prisoner John

Pg. 41 Gov. Bush's 1st/ J. Greschner
#02550-135
5-28-00

DOE, CIVIL CASE # 00-ES-457, file
WITH THE COURT INITIALLY ON 3-1-00,
TO 5-3-00, WITH EXHIBITS ON FILE OF
PLAINTIFFS GRESCHNER (EXH # 1-5, # P-
# 5) PLAINTIFF WEERS (EXH # A-M), IF SAID
RECORDS WERE NOT CONFISCATED BY
U.S. SECRETARY OF STATE ALBRIGHT, AND
U.S. DRUG CZAR GEN. MCCAFFREY, WHEN
THEY WENT TO DENVER TO VIEW THE
COURT FILED DOCUMENTS BY PLAINTIFFS,
AND TO KEEP IT EXTREMELY QUIET
(SEC. STATE ALBRIGHTS COVER STORY FOR
BEING IN DENVER, WAS A LOCAL MEET-
ING IN HER HOME TOWN, REGARDING
CHINA'S TRADE STATUS; DRUG CZAR
MCCAFFREYS COVER STORY, WAS TO MEET
WITH AND OFFER ENCOURAGEMENT TO
A SMALL LOCAL ANTI-DRUG TREATMENT
GROUP); IT MUST BE REMEMBERED,
THAT AT LEAST TWO GOVERNMENT
OFFICIALS (MEXICAN) HAVE DIED SO
FAR (ALFREDO DE LA TORRE, CHIEF OF
POLICE, TIJUANA, MEX., SHOT TO DEATH;
JUAN MANUEL IZABAL, MEMBER
OF MEX. ATTORNEY GENERAL OFFICE,
MEXICO CITY, SHOT TO DEATH) AS A
DIRECT RESULT OF THE U.S. DOJ AND
BOP PURSUING THEIR OWN PRIVATE
AGENDA'S, WHICH QUICKLY RAN OUT OF
CONTROL (I HAD WARNED THE DEFENDANTS,

FBI, ATF ETC, THAT KEVIN ROACH, GENE
BENTLY ETC, WERE CON MEN, AND TO
BE WATCHED, BUT THEY IGNORED MY
WARNINGS ON THAT, AND ON THE PLOT
TO KILL U.S. GOV. OFFICIALS WITH EX-
PLOSIVE DEVICES — INDEED, THE U.S.
DOJ PLACED ROACH IN THE DOJ WIT-
NESS SECURITY PROGRAM, FROM WHICH
SECURITY STATUS HE STOLD THE CLASSI-
FIED U.S. GOV. DOCUMENTS AND TEXAS
CITIZENS NAMES, ADDRESSES ETC, WHICH
WERE GIVEN TO HIM AND OTHERS, UNMON-
ITORED, EVEN THOUGH ROACH AND HIS
CO-CONSPIRATORS HAD NO SECURITY CLEAR-
ANCES FOR SAID CLASSIFIED DEA, CIA,
NSA, INTERPOL ETC. DOCUMENTS) AND
HAS RESULTED IN A UNMITIGATED DIS-
ASTER --- PLEASE ACKNOWLEDGE RECEIPT
IMMEDIATELY; THERE IS MUCH MORE; I
HAVE BEEN RECEIVING BOP THREATS AGAINST
MYSELF AND MY FAMILY, FOR TRYING TO
DO THE RIGHT THING IN THIS MATTER; I HAVE
EVEN BEEN THREATENED WITH CRIMINAL
INDICTMENTS IF I CONTINUE TO ASSERT
THE INNOCENSE OF A FALSELY ACCUSED
CORRECTIONAL OFFICIAL, WHOM I KNOW
TO BE INNOCENT OF ANY WRONGDOING..
I AWAIT YOUR RESPONSE IN THIS MOST
SERIOUS OF MATTERS; UNTIL THEN

Pg-6\ Gov. Bush & Taps \ J. Greschner
#02550-135
5-28-00

Stay Strong In And For True
Justice ...

S. Nceerely —

John Greschner
#02550-135
U.S. Penitentiary - max.
P.O. Box 8500
Florence, Co.
81226-8500

c.c. file.
c.J #00-es-457.
media.

(Page Six of Six)

EX # 12   5-13-01

TO: S. _____
FED. MED. CENTER
P.O. BOX 4000
SPRINGFIELD, MO. 65808

S.I.S. LIEUTENANT
EYES ONLY

ADVISORY: ON 5-3-01, I SPOKE TO
A.D.X. - FLOR. S.I.A. CARPEN-
TER, S.I.S. YORR, AND A F.B.I. AGENT
FROM COLORADO SPRINGS, CO., DUE TO
A LETTER I SENT TO YOUR OFFICE, REGARD-
ING THE SCOTT MATTER; (I HAVE WRITTEN
YOUR OFFICE ON TWO OCCASSIONS; 3-27-01,
AND 4-10-01); I ADVISED THE AFORESTATED
INVESTIGATIVE OFFICIALS OF: (PARTIALLY);
   1.) THE COMPROMISING OF THE SCOTT
       MATTER, (INVESTIGATION & PROSECUTION);
   2.) THE THREAT (CONSPIRACY TO KIDNAP &
       MURDER A FEMALE EMPLOYEE FROM
       YOUR FACILITY) WHICH IS ONGOING AND HAS
NOT BEEN STOPPED;
   3.) THE INVOLVEMENT OF STAFF MEMBER(S)
       (ON MY CURRENT INFORMATION IS THAT
THERE IS MORE THAN THE ONE STAFF
MEMBER I ADVISED THE ABOVE OFF-
ICIALS OF ON 5-3-01) IN SMUGGLING
CONTRABAND (DRUGS; HARD CONTRABAND
[SAW BLADES & WEAPONS]; AND MESSAGES
CONTAINING INFORMATION ON CRIMINAL
ACTIVITY(S), INCLUDING THE NAME, ADD-
RESS, AND TYPE OF VEHICLE DRIVEN BY
THE FEMALE BOP EMPLOYEE (#2 ABOVE)
DETAILED INFORMATION [NAME; ADDRESS;
PH.# ] OF A ATTORNEY WHICH IS TO BE
KIDNAPPED, EXTORTED [RANSOM] AND MUR-

Case 1:06-cv-00295-CW   Document 15   Filed 04/24/08   Page 43 of 82

DERED [THIS PLOT IS ONGOING, AND INVOLVES
AT LEAST ONE STAFF MEMBER, AND MULTI-
PLE INMATES AND INDIVIDUALS ON THE
OUTSIDE; THERE ARE INMATES ON YOUR
OPEN POPULATION WHO ARE INVOLVED IN
THE SMUGGLING, AND AT LEAST ONE OF
THE MURDER CONSPIRACIES < ATTORNEY >, BUT
MAY ALSO BE INVOLVED IN THE CONSPIRA-
CY TO KIDNAP & MURDER THE BOP EM-
PLOYEE] THESE MESSAGES ARE SMUGGLED
WITHIN THE FACILITY, AND HAVE BEEN SMU-
GGLED TO THE OUTSIDE AND MAILED TO
LOCATIONS FOR CO-CONSPIRATORS).

4.) IT SHOULD BE NOTED, THAT I IN-
QUIZED IF THE STAFF MEMBER(S) WOULD
SMUGGLE FIRE ARMS — SMALL - .25 CAL.
AUTOMATICS — (ALONG WITH THE AFORE -
STATED CONTRABANDS, AND THE PROVIDING
OF FACILITY SECURITY INFO IN CONNECTION
WITH THE ESCAPE CONSPIRACY) AND I WAS
ADVISED "YES" - - -

5.) I AM NOT COMMITTING EVERYTHING TO
PAPER, AS A SECURITY MEASURE; I AD-
VISED CARPENTER, YOU'R & FBI AGENT OF
THE SECURITY BREECH IN THE SIS\SIA
OFFICE AT THE ADX, AND, OF YOU (TO)
PROCEEDING WITH EXTREME CAUTION TO
PREVENT SECURITY LEAKS AT YOUR FA-
CILITY;

6.) HOW HAVE "HARD" CONTRABAND IN
YOUR FACILITY RIGHT NOW, HOW EX-

PA-3 \ SIS LT \ Spofford mo \ J. Gressinger
#02550-185

5-14-01

TENTATIVE, IS YET TO BE DETERMINED (CUTTING
IMPLEMENTS & CUFF KEYS FOR SURE). WEAPONS
(+KNIVES) HAVE BEEN TRANSPORTED BY STAFF
WITHIN THE FACILITY; CONTRABAND IS BEING
SOLD BY STAFF (EXAMPLE: $500.00 PER
SAW BLADE); MY SOURCE (A CENTRAL CON-
SPIRATOR) ADVISED THAT STAFF MAY SELL
(SMUGGLE) A FIRE ARM (.25 CAL.) FOR
$10,000.00 PER UNIT. THIS WILL HAVE TO
BE DETERMINED VIA A "STING" OPERATION;
MY SOURCE ADVISED THAT HE CAN ASSURE
ME, THAT HE WILL HAVE "HIS" STAFF BRING
ME SAW BLADES, DRUGS & OTHER CON -
TRABAND;

7.) I HAVE BEEN GIVEN A DESCRIPTION
AND NAME OF THE TARGETED FEMALE
EMPLOYEE AT YOUR FACILITY (WHICH I WILL
NOT COMMIT TO PAPER, DUE TO SECURITY
CONSIDERATIONS); IT SHOULD BE ACCUR-
ATE, UNLESS MY "SOURCE" IS BECOMING
SUSPICIOUS OF MY INQUIRIES;

8.) I'VE SUBMITTED A PHONE # FORM TO
ADD THE TARGETED ATTORNEY ON MY
PH. LIST; THIS ATTORNEY IS "DIRTY", A
BROKER (CRIMINAL ACTIVITIES; INCLUDING
PAYOFFS FOR MANUFACTURED EVIDENCE'S;
AIDING & ABETTING HOMICIDE; MURDER CON-
SPIRACIES ETC) A MONEY LAUNDERER FOR
DRUG CARTELS; I HAVE RECEIVED MONEY
VIA A 3RD PARTY FROM THIS ATTORNEY AND
A CO-CONSPIRATOR WITH THE ATTORNEY AND

This was for assistance I provided. A problem resolution (They were involved in a homicide, with the assistance of Police); I have written a ATF Agent about this Attorney (I don't know if he received the letter); I intend to prevent this Attorneys murder, and to bring the Attorney to Justice, along with co-conspirators; Information on this Attorney (Re: Attorneys kidnap, ransom & murder) was sent from your facility (smuggled out by staff), and transmitted to a location in Tijuana, Mexico, and is to be retrieved by co-conspirators on the outside; Additionally, resources in Tijuana are to be utilized toward the success of the mission(s) (Attorney, BOP employee female; escape activity); Itherouey I received, was while I was in Marion, Illinois, in I - Unit; 9.) Your facility perimeter security has also been compromised by staff providing security intelligence and facility procedures to their co-conspirators (Towers, Patrols etc.); 10.) Your office was provided false info on the Scott matter; The "Victim" is going to sue the BOP (multi-million dollars); You were also lied to (to throw your investigation off) Regarding the female employee & her "BMW";

11.) I have concerns and lack confidence in this facility's sis\sia office in addition to the known leaks (sis official is providing info to one [or more] of the co-conspirators; they are acting unprofessional and irresponsibly, due to their "personal" feelings over the H-Unit fiasco; This is a very dangerous position to take — I will not be held responsible for any subsequent criminal activities, based on investigators failures to take action...

S. Sleazery —

John Greschner
#02550-135
Adx-flor.
P.O. Box 8500
Florence, Co.
81226-8500

c.c. file.
BOP D.2. Howre-Sawyer

TO: S. I.
 S.I.S. Office
 Fed. Med. Center
 P.O. Box 4000
 Springfield, MO. 65808

CERTIFICATE of
mailing ATTACHED

EX # 13

GREETINGS & SATCH, BANANDA —

ADVISORY: By THIS DATE YOU SHOULD BE
AWARE of THE Names of At LEAST ONE (1)
of THE DIRTY STAFF (I ADVISED S.A. DANIELL,
AND S.IS CARPENTER & YORR); AND of His Con-
spiracy TO MURDER A female STAFF mem-
BER; Smuggling ActiVITIES; manufacturing
EVIDENCE IN CRIMINAL MATTERS (SCOTT CASE
ETC); giving Up Your facilities SECURITY
INFO (CAMERAS & MONITORS; WHICH & WHEN
TOWERS ARE MANNED; PERIMETER PATROLS
ActiVITIES ETC) TO ASSIST IN ESCAPE ActiVITY
(NOTE: He is CHARGING $20 K TO ASSIST IN
A ESCAPE; He is DEDUCTING $10 K for THE
CONTRACT TO MURDER THE female STAFF
MEMBER ("MS. BMW" — "MS. REAL DEAL")
AND HAS DEDUCTED OR PUT off PAYMENT
ON A SOME HACKSAWS & DRUGS (WEED) UN-
TIL THE ESCAPE IS EFFECTED, MS. BMW
IS KILLED AND THE BALANCE IS THEN TO
BE PAID); YOU SHOULD HAVE THE name of
AT LEAST ONE (1) of THE INMATE CONSPIR-
ATORS AS of THIS DATE; YOU SHOULD CHECK
THE CELLS He WAS IN (IN 2-1-E) AS He
CLAIMS He BEGAN TO WORK ON THE CELL
(CUTTING — I BELIEVE A WALL AREA), BUT
(1 of 7).

THIS WAS DISCOVERED BY A STAFF MEMBER, AND
THE INDIVIDUAL DENIES IT, AND ADVISES HE HAS
ONLY BEEN IN THE CELL ONE (1) DAY, APPAR-
ENTLY HE CONVINCES THE STAFF MEMBER HE
WAS INNOCENT, WITH "HIS" DIRTY STAFFS ASSIS-
TANCE (THE ESCAPE PLOT IS TO CUT THROUGH
THE WALL\VENT, TO GAIN ACCESS TO THE UNIT
HALLWAY & JUMP [CAPTURE] THE "SINGLE
STAFF MEMBER" DOING THE AFTER 4:00 P.M.
COUNT ON WEEKENDS; GET THE KEYS FROM
THE OFFICER AND OFFICE, AND EFFECT THE ES-
CAPE IN A FASHION WHERE HE DOES NOT HAVE
TO NAVIGATE THE SECURITY FENCES [OVER ROOF,
USE ELEVATER TO GET TO ANOTHER HOSPITOL AREA?
AT ANY RATE HE IS QUITE CONFIDENT, AS HE
HAS BEEN PROVIDED ALL THE SECURITY INFO
[UNIT CAMERA'S & THAT MONITOR IS IN UNIT OFF-
ICE', WHICH TOWERS ARE MANNED < CLAIMS ONLY
TWO ON THE WEEKEND — I BELIEVE THE FRONT,
AND THE SALLYPORT>; PERIMETER ROVER PA —
TROL ROUTES, PATTERNS ETC] BY THIS "DIRTY
STAFF" MEMBER; TO CHECK ON ANY CUTTING
DONE IN THE CELL AREA (ABOVE), CHECK WITH
THE UNIT STAFF WHO WORKED THE UNIT
WHEN THIS INDIVIDUAL WAS THERE, AND, IT
WOULD HAVE TAKEN PLACE BEFORE THE STEVE
SCOTT INCIDENT (AS THE CONSPIRACY TO MUR-
DER THE FEMALE EMPLOYEE, SMUGGLING, ESCAPE
PLOT ETC. _____ (2 of 7)

was going on before the Scott incident. According to this individual, and that the Scott incident fucked everything up on the escape mode); That is when He & His dirty staff Co-Conspirator began manufacturing evidence on the Scott matter, and providing false evidence That made He & His dirty staff member look good, and other staff look bad (minimally A *1 < white officer) and A Lt. < white officer) As They Represented The false evidence in such a way They made it Appear The other officers failed in Their Duties and Placed (4) four staff lives in Danger — All manufactured evidence, The staff members were NEVER DERELECT IN THEIR DUTIES).

His dirty staff member gave Him all The Names, dates, Times, Descriptions of evidence (knive(s) etc) That He Needed to Represent it As Credible to The special S.I.S office', including Yard exercise Dates with Various individuals; The Piece of ink Pen (Home made Handcuff Key), The Note (found in Scotts Cell Along w/ Key") Are All manufactured & Planted by This individual And His dirty staff; This goes on & on; I Am Doing What I Am Doing (exposing All This) to Protect The female

(3 of 7)

PG-41 = PRFILD SIS LT. \J. GRESCHER # 02550-135
6-19-01.

EMPLOYEE'S LIFE (JUST BECAUSE SHE WAS IN
A RELATIONSHIP WITH THE DIRTY STAFF MEMBER
THAT "WENT BAD", IS NOT JUSTIFICATION TO
ALLOW HER TO BE VICTIMIZED BY SOME
CRIMES OF PASSION — I.E., MURDER — I
WILL NOT ALLOW THAT TO HAPPEN); TO PREVENT
A POSSIBLE DISASTER (INCLUDING HOMICIDE)
TO YOUR STAFF MEMBER DURING THE CONSPIRED
ESCAPE PLOT; AND TO PROTECT THIS INDIVIDUAL
(WHO I HAVE KNOWN FOR MANY YEARS) FROM
ACTIVITIES WHICH COULD HAVE DISASTROUS
CONSEQUENCES FOR HIMSELF; DURING OUR
CONFIDENTIAL CONVERSATIONS HE HAS CON-
FIDED IT ALL TO ME; I HAVE SINCE CON-
VINCED HIM TO SPEAK WITH THE BOP
SIS & FBI, IN REGARDS TO ALL THIS (IN-
CLUDING THE CONSPIRACY TO KIDNAP, EX-
TORT & MURDER A DIRTY ATTORNEY IN
THE SAN DIEGO\TIJUANA AREA); BUT,
HE IS STILL UNWILLING TO DIVULGE IT
ALL (HE WANTS TO KEEP SAW BLADES PRO-
VIDED BY HIS DIRTY STAFF); HE WANTS TO
KEEP OTHER CO-CONSPIRATORS OUT OF IT
(THOSE ON OUTSIDE, AND ON INSIDE, IN-
CLUDING THE "CASA BLANCA" PLAYER, TI-
JUANA CONNECTIONS ETC); HE ADVISED ME
THAT SIS LT. SMITH (ADX) THREATENED
HIM ON 6-13-01 IN REGARDS TO ALL THIS,

Pg-5 | Spengler S.I.S LT. \ J. GRESCHJER #02550-135

6-19-01.

Although I have Not Validated This; I must
Be Very Careful in my Activities, I Had Ad
Vised S.I.S Carpenter & Yorr & FBI Agent
Daniell of The Lear in Their office (which
goes Directly Back to This Individual),
Apparently They Have Not Taken Heed of
This Advisory. As The "Lear" Has Apprises
The Individual That I Am Providing
All The Information To BOP S.I.S \ S.I.A
And The FBI; As A Result of The ADX
S.I.S office Subverting me in These Eff-
orts, The Individual is Now Suspicious
And Guarded Around me (This Individual
Refers To His S.I.S official [Lear] As His
"Secretary" — Whom He Debriefs on A
Regular Basis) Regarding Sensitive In-
formations — This Can Have Disaster-
ous Consequences for All Parties Con-
cerned, especially The BOP And Vul-
Nerable employee's --- It should Be
Noted, That His "Lear", Was A Known Smug-
gler Himself, A few Years Ago, And Was
Involved in Smuggling Activities with
This Individual in The San Diego MCC
in Approx. 1990 --- This Both Subverts
my Efforts in This Facility, And Places
me in A Very Vulnerable (exposed) Po-
sition--- I only know of Your office

Pg-6 \ Sjeshtes sis et. \ ... Hec ... Jece ... 550 - 13:
6-19-01.

Receiving one (1) of Three (3) Letters I have
Sent You, This Concerns me. As I Had A Letter
intercepted By A Staff member Here (Regard-
ing gang \ Docketeering Activities), in This facil-
ity, And she gave me up to the gang members;
(Advised Them That I Had exposed Their
gang Activities in A Confidential Letter
To Unitmanager Collins, Which she Had
intercepted And Read), And I Don't
Know If my other Letters Are making
it Through, or Also intercepted And com-
promising me And Placing me in Danger,
Not To mention compromising Your
investigation in Your facility; I cer-
tainly Hope I Don't Hear That The fe-
male employee suffers Any Harm Due
To The Subversion of my efforts And
The lack of Cooperation By This fa-
cilities SiS \ SiA office (They're still
peeved About Their H-Unit fiasco,
Hey, Don't Blame me, I Tried To
Help Them But They Chose Another
Route + it Blew up on Them); I
Am enclosing A 5-Pg. Letter (Copy) I
Sent To fBi Agent Daniell on 5-
19-01 (Colo. Springs, Co.); I Am Also
Sending A Copy of This Letter To Dir-
ector Hawk-Sawyer, Who Will Be in-

TERESTED HOW THIS INVESTIGATION IS PRO-
CEEDING, ESPECIALLY THE FEMALE EM-
PLOYEE'S SAFETY - - -

PLEASE ACKNOWLEDGE RECEIPT OF
THIS COMMUNICATION & ENCLOSURE,
SO I KNOW YOU HAVE ACTUALLY RE-
CEIVED IT - - -

SINCERELY —

JOHN GRESCHNER
#02550-135
ADX-FLOR.
P.O. BOX 8500
FLORENCE, CO.
C.C. DIR. HAWRE-SOWYER   81226-8500
FILE.

( 7 of 7 )

TO: RATHER JE HAWR-SAWYER
    DIR. - FED. BOP
    320 FIRST ST., N.W.
    WASH., D.C., 20534

(6-19-01)

CERTIFICATE OF
MAILING ATTACHED

EX. # 14

DEAR DIRECTOR HAWR-SAWYER —

My BEST GREETINGS AND REGARDS
TO YOU, I HOPE THIS FINDS YOU WELL
IN BOTH HEALTH & SPIRITS...

ENCLOSED HEREWITH, PLEASE FIND
THE 5-Pg, LETTER TO THE S.I.S. OFFICE
(LIEUTENANT), FED. MEDICAL CENTER,
SPRINGFIELD, MO., REGARDING A CUR-
RENT INVESTIGATION — I FIGURED
I HAD BETTER KEEP YOU APPRISED
OF THIS... STAY WELL —

                    SINCERELY —

                    JOHN GRESCHNER
                    #02550-135
                    ADX - FLOR.
c.c. FILE.        P.O. BOX 8500
                  FLORENCE, CO.
                      81226-8500

TO: S.I.S. LIEUTENANT
   FED. MED. CENTER
   P.O. BOX 4000
Springfield, MO. 65801

7-31-01

EX. # 15

GREETINGS — YOUR CAPTAIN PASSES THROUGH
    HERE THE OTHER DAY, HE SAID YOU HAVE
RECEIVED MY MAIL, GOOD...
   ADVISORY: REGARDING THE PREVIOUS INDIVIDU-
  ALS I ADVISED YOU OF (I DON'T WANT TO
COMMIT NAMES TO PAPER AS THERE ARE JUST
TOO MANY LEAKS, I'VE BEEN GETTING THREATS
CALLED RAT ETC, ETC — DON'T WORRY I'M
PREPARED TO DO WHAT I'VE GOTTO DO TO
DEFEND MYSELF — BUT I'M TRYING TO
KEEP CRITICAL INFORMATION CONFIDENTIAL
SO AS NOT TO FOREWARN CULPABLE PARTIES):
I'VE BEEN APPRISED THAT THE C.O. ALSO
WORKED EVENING WATCH (LATE) AND WOULD
HANDLE BUSINESS THEN ALSO; HE ALSO GAVE
THE INMATE THE PARTICULARS OF THE FEMALE
EMPLOYEE (MEDICAL DEPT.) WORK SCHEDULES,
LOCATION OF OFFICE IN YOUR FACILITY ETC;
   ALSO, THE ESCAPE MOVE, WAS TO CAPTURE
THE C.O. WORKING 2-1-E (SINGLE C.O. ON
WEEKENDS AFTER 4:00 P.M.), SECURE HIM
AFTER TAKING HIS UNIFORM, GET THE KEYS
FROM THE OFFICE, AND THEN LEAVE THE UNIT
TO THE OUTSIDE, AND NEUTRALIZE THE PERI-
METER C.O. (WHO CHECKS INSIDE FACILITY
SECURITY, BY WALKING THROUGH THE FACILITY

AND HAS THE KEYS TO THE DOORS & GATES)—
ALL THE RELEVANT INFO (WHEN THE PERIMETER
SECURITY C.O. WALKS; THE KEY'S & WHAT GATES
DOORS ETC HE\SHE POSSESSES; THE BEST ROUTE
OUT; WHAT GUN TOWERS ARE MANNED ON THE
WEEKENDS \ LATE NIGHT [CLAIMS ONLY TWO] ETC)
WAS PROVIDED BY THE C.O., SO THAT THE
OUTSIDE ASSISTANCE ("ERNESTO" [NOTE: THERE'S
MORE THAN ONE "ERNESTO" INVOLVED, CHECK TO SEE
IF THERE WAS A "E. DE LA TORRE" NARRED IN THE
U.S. CUSTOMS STUDY ⟨TIJUANA, MX⟩, ALSO IN
YOUR FACILITY ⟨HE WAS A TIJUANA CONNECTION; I
ALSO ADVISED S.A. CARPENTER, SIS YOUR AND
F.B.I. AGENT DANIELL OF THIS ERNESTO, I'M
SURE THEY ADVISED YOU?⟩ THIS GUY WAS SHORT TO
STREETS ⟨DEPORTATION⟩ ANOTHER ERNESTO IS
FROM E. CANADA; ALSO A ABILIO [FROM MIAMI]]
COULD MAKE THE PICK UP; ALSO CHECK TO SEE
IF THIS PERSON GOT A VISIT FROM A INVESTI-
GATOR (THIS INVESTIGATOR PROVIDES INFO & ASSIS-
TANCE [HAS ASSISTED ON A ESCAPE IN THE PAST;
DOCUMENTS ETC; PROVIDED INFO & ASSISTANCE OF
LAWYER R. D. Japp. JOS & ROBBERY; HELP SET UP
DRUG R.P OFF'S & MURDER ⟨WITH DIRTY ATTOR-
NEYS & DIRTY LOCAL STATE POLICE — THEY WERE
ALL INVOLVED IN THE R.P OFF & MURDER OF THE
GAO INDIVIDUAL FOR THE FELIX ARELLANO
CARTEL, TIJUANA⟩] THIS INVESTIGATOR WAS SU-

Pg-3\S.S -LT. SPRINGES \ S. EFRESCHNER OS550-135
7-31-01.

PPOSE TO PROVIDE I.D., PASSPORTS, AND
HELP TO LURE A SPECIFIC ATTORNEY TO TIJUANA
(WHOM HE KNOWS & DOES BIZ WITH < CRIMINAL>
SO THE ATTORNEY COULD BE KIDNAPPED, MADE
TO PAY $5 MIL, THEN MURDERED [DUE TO HIS
FAILURE TO PAY FUNDS OWED ON A PREVIOUS
BUSINESS DEAL; ALSO HE HAS BECOME A LIABILITY
ON THE SALE OF INFORMATIONS & MURDERS RE-
SULTING FROM SAID SALE] THE F.B.I. HAS TRIED
TO CATCH THIS ATTORNEY FOR A LONG TIME, THEY
BETTER HURRY, THIS PERSONS DAYS ARE NUM-
BERED) I'M NOT GOING TO MENTION ALOT OF
NAMES (FULL) ITS TOO RISKY TO ME, AND ANY
ONGOING INVESTIGATIONS; ERNESTO IS ALSO IN
ON THE MOVE ON MS. "BMW" (YOU ALREADY
KNOW WHO THIS IS — ARE YOU GUY'S INSURING
HER SAFETY? I HOPE I'M NOT GOING THROUGH
ALL THIS JUST TO HEAR SHE GETS KILLED OR
SUFFERS GREAT BODILY HARM); THE INMATE IS
STARTING TO GET "COLD FEET" (A LEAD IN THIS
FACILITY APPRISES HIM THAT I SPOKE TO
FBI S.A. DANIELL & S.A CARPENTER & SIS YORK);
SO I ADVISED HIM THAT I APPRISED THEM OF
"GENERALITIES" OF THE ACTIVITIES, BUT THAT HE
WOULD HAVE TO GO INTO PARTICULARS; THE F.B.I.
HAS NOT ARRIVED TO SEE HIM YET (TOO MUCH
TIME HAS PASSED, THE INITIAL SHOCK HAS PASSED
AND HE'S HAVING SECOND THOUGHTS ABOUT SPEAK-

PG-4\SIS-LT. SPEGFLD\ J. GRESCHNER#0D550-135
7-21-01,

---

ING WITH FBI, ETC, THEY BETTER SPEED IT UP); BE
ADVISED THAT THIS INMATE HAS SPOKEN OF
A C.O. NAMED "DICKENSON" AT YOUR FACILITY
(IN SOME FASHION MIXES UP, IN ALL THIS ——
I AM NOT SAYING HE IS DIRTY — HIS NAME
HAS COME UP MORE THAN ONCE IN CONNECTION
WITH ALL THIS); ALSO, THERE ARE LOT. JO'S ON
YOUR MAIN LINE INVOLVED IN ALL THIS; ALSO, ON
THE ESCAPE MOVE PRESSED BY THE C.O., THE IN-
MATE WAS CONCERNED ABOUT CAPTURING THE
STAFF (HE TRIED THAT IN M.C.C. SAN DIEGO, AND
THE STAFF MEMBER BROKE FREE FROM HIM AND
HIT THE DEUCES); D-1-E C.O. HAS A BODY A-
LARM ALSO, WHICH COULD DISRUPT THE MOVE AND
RESULT IN A HOSTAGE SITUATION ETC, THATS
WHEN THE C.O. OFFERED A .25 CAL. AUTO FOR
$10 K — STATING THE OFFICER WILL NOT BUCK
A FIRE ARM; (WHAT IF THE C.O. TH.NKS ITS A FAKE
TH.NK.NG THERES NO WAY A PRISONER COULD HAVE
A REAL FIRE ARM? IT COULD TURN INTO A HOM-
ICIDE QUITE RAPIDLY)--- DID YOU RECEIVE MY
LAST COMMUNICATION W\ THE COPY OF MY LET-
TER TO S.A. DANIELL? I HOPE IT GOT THROUGH.
END---

C.C. DIR. HOWE
   F.LE.

NEXT PAGE ↓

JOHN. GRESCHNER
#0D550 -135
ADX-FLUR.
P.O. BOX 8500
FLORENCE, CO.
81226-8500

7-21-01.

P.S. I HAS ADVISED S.A. DAJIELL, S/A CARPENTER, S/A YOZE, THAT THEY COULD CATCH THE C.O. RED HANDED IN A "ST.JG", WHEN HE PASSES (m, JIMMCY) HACKSAW BLADES TO ME (FROM THE OTHER PRISONER) — APPARENTLY THEY HAVE NOT ACTED ON THIS (THE OTHER PRISONER SAID IF I WENT TO SPRINGFIELD, HE WOULD ARRIVE RIGHT BE-HIND ME, WITH 30 DAYS, AND WE COULD MAKE THE MOVE — ESCAPE — TOGETHER, ALSO, THAT WE [INCLUDING ERNESTO, ABILIO ETC] COULD [QUOTE] "GO KILL THE BITCH" AT HER HOME, THEN PICK UP OUR DOCUMENTS & SPLIT) --- ALL THIS IS LEAKING OUT; NOW YOU SEE WHY I INITIALLY WENT TO THE F.B.I., IN WASHINGTON D.C., VIA A THIRD PARTY COMMUNICATION (A U.S. SENATOR WELLSTONE) WARNING OF THE CONSPIR-ACY TO KILL BOP officIALS W/EXPLOSIVE DEVICES (TRUCK BOMBS ON CENTRAL OFFICE & N.C.R.O., AND LETTER BOMBS TO VARIOUS BOP EMPLOYEE'S), TOO MANY LEAKS, ITS MUCH TOO DANGEROUS. --- I ALSO KNOW WHERE THIS INDIVIDUAL HAS STASHED A HANDCUFF KEY (IT SHOULD STILL BE THERE) THAT WAS SMUGGLED TO HIM — ITS INSIDE A DOOR JAM---

— END —

J. GRESCHNER

C.C. D.R. HAWK.
     FILE.

To: R. Hood - Sawyer
        Director - BOP
320 First St, N.W.
Washington, D.C. 20534

7-21-01

Ex # 16

Dear Director — my Best greetings And
        Regards, I Hope This finds You Well
In Health & Spirits --- To keep You Appised
Please find enclosed Herewith, A 5-
Pg. Letter To The S.I.S. Lieutenant,
Fed. Med. Center, Springfield, MO', Re-
garding Same Subject matters I Have
Previously Written You About---
    Stay Well---

                    Sincerely —

                    John Greschner
                    #02550-135
                    ADX-FLOR;
                    P.O. Box 8500
C.C. File.         Florence, Co.
                        81226-8500

EX. # 17

TO: S.I.S.

FED. MEDICAL CENTER
P.O. BOX 4000
SPRINGFIELD, MO. 65801

8-19-01

CERTIFICATE OF
MAILING ATTACHED

GREETINGS — I HOPE YOU'VE RECEIVED
MY LAST COMMUNICATION OF 7-21-
01 ---

ADVISORY: ACCORDING TO THIS INMATE,
C.O. DICKENSON WAS IN A SUPER-
CEDING RELATIONSHIP WITH THE LADY
IN PERIL (MS. BMW), AND THIS MADE
THE OTHER C.O. (YOU KNOW WHO) IN-
SANELY JEALOUS --- ADDITIONALLY, THERE
IS MINIMALLY TWO (2) SAW BLADES IN
YOUR FACILITY (THAT HAS BEEN SMUGGLED
IN) WHICH HAVE NOT BEEN SECURED; ALSO
THE KEY I ADVISED YOU OF, WILL BE
SECURED SHORTLY (IN THE DOOR JAM OF
THE CELL) AND USED AS EVIDENCE IN
A FEDERAL PROSECUTION --- BE ADVISED
THAT THIS INDIVIDUAL IS NOT GOING
TO WANT TO GIVE UP THE OUTSIDE
PERSONELL THAT I APPRISED YOU OF
IN MY 7-21-01 COMMUNICATION (HE
IS UNAWARE THAT YOU HAVE THIS IN-
TELLIGENCE), THE INVESTIGATOR IS A
MAJOR PLAYER IN HIGH LEVEL UNDER-
WORLD ACTIVITIES — HIS APPREHENSION
WILL REQUIRE A STING — AND THIS
INDIVIDUAL (INMATE) CANNOT KNOW

Pg-2 | S.S LT. SPROULS | J. GRESCHNER
#05550-135

8-19-01.

THAT A STING OPERATION IS GOING
DOWN; ADDITIONALLY, I AM SENDING
OUT A COMMUNICATION (8-20-01) TO
A LAWYER (CRIMINAL) WHO IS ALSO IN-
VOLVED IN THE UNDERWORLD ACTIVITIES,
(WHICH IS CONNECTED TO ANOTHER ATTOR-
NEY CURRENTLY UNDER FED. INVESTI-
GATION FOR CRIMINAL ACTIVITIES) AND
IS CONNECTED VIA NARCO-TRAFFICKERS
AND THEIR ACTIVITIES — THE LETTER CON-
TAINS BAIT INFO --- BE ADVISED THAT I
SENT COMMUNICATIONS TO THE U.S. ATTOR-
NEY & FBI FIELD OFFICE (WESTERN DIS-
TRICT OF MISSOURI — JURISDICTION
HANDLING THE SCOTT MATTER) AND WARNED
THEM OF INFORMATIONAL EVIDENCE BE-
ING ASSEMBLED FOR THE SCOTT DEFENSE
THAT IMPLICATES THE BOP DIRECTLY
IN CRIMINAL ACTIVITIES; ALSO THAT
FALSE INFO HAS BEEN SUPPLIED TO THEM
BY THE C.O. & INMATE (WHO YOU ARE
AWARE OF), SO THEY WILL NOT BE
AMBUSHED WITH SAME AT TRIAL (THE
CRIMINAL ACTIVITIES ARE THE PLACING OF
PRISONERS TOGETHER [KILL OR BE KILLED]
WITH KNOWN ANIMUS TOWARD EACH OTHER
[THATS WHY THE S.I.S. HERE ADVISED YOUR
OFFICE REGARDING SAME, WHEN SCOTT &

THE D.C. BLOCK WERE PLACED TOGETHER IN THE SHOWER ROOM IN YOUR FACILITY, RE-SULTING IN THE INCIDENT], THE EVIDENCE IN-VOLVES A SERIES OF INCIDENTS, IN VAR-IOUS BOP FACILITIES (MARION, LEWIS-BURG, LOMPOC, ADX-FLOR, SPRINGFIELD ETC) INCLUDING HOMICIDES & STABBINGS (SUCH AS THE 1997 LEWISBURG EVENT, [WHICH INCIDENTALLY WAS AGITATED BY COREY FOWLER #08457-017, (A BLACK PRISONER) WHO CONVINCED ANOTHER BLACK PRISONER (TITUS WEBSTER #03764-000) TO OPENLY GO AROUND ADVOCATING THE MURDER OF WHITE PRISONERS IN GEN-ERAL, AND THOSE DESIGNATED A.B. IN PARTICULAR, AND RECRUITING OTHER BLACKS TOWARD THAT END (THATS WHY WEBSTER ENDED UP GETTING STABBED IN LEWIS-BURG & HIS HOME BOYS WERE KILLED, FOWLER & WEBSTER GOT PEOPLE SO PARANOID VIA THEIR ACTIVITIES, THAT THEY WERE CONVINCED THAT THEY WERE IN A KILL OR BE KILLED SITUATION, AND EVERYONE [PRISONERS & BOP] KNEW OF FOWLER & WEBSTERS ACTIVITIES [FOWLER IS CURRENTLY DOING THE SAME THING IN THE ADX FACILITY, BY RECRUITING YOUNG NAIVE BLACKS, SUCH-

P1-4\ SIS LT SPEAKER\ J. FRESSHNER
#02550-125
8-19-01.

As James BRAITHWAITE #17194-083,
AND OTHERS, TO ATTACK OR STABB OTHER
PRISONERS — IS FOWLER & BRAITHWAITE
WORKING FOR THE BOP AS AGENT PRO-
VACATEURS? I ASK THIS, AS EVERY —
ONE (INCLUDING ADX OFFICIALS) ARE A-
WARE OF THEIR ACTIVITIES, INCLUDING
GANG RELATED SMUGGLING, AND NO
ACTION IS TAKEN], AT ANY RATE, BE
ADVISED, THIS IS THE TYPE OF INFO\
EVIDENCE BEING ASSEMBLED BY SCOTT
FOR HIS DEFENSE ... (I JUST SPOKE TO
THE INMATE — HE WAS CLEANING THE OUT-
SIDE REC. YARD, EARLY MORNING; HE
ADVISED ME THAT HIS "SECRETARY" [THE
S.I.S. LEAD, YOU KNOW WHO THIS IS] ASKED
HIM IF ITS TRUE WHAT I'M SAYING ABOUT
THE DIRTY C.O., OR AM I CRAZY — HE
LAUGHED, HE KNOWS ITS TRUE, AND THAT I
HAVE TOO MANY PROVABLE FACTS THAT I
HAVE SENT TO YOU'S [AND SOME I HAVE
YET TO REVEAL]; HE SAID THEY MAY
TRY TO CALL HIM ON THE SCOTT CASE,
AND KNOWS ITS VERY RISKY FOR HIM
NOW, THAT ITS KNOWN TO BE MANUFACT-
URED EVIDENCE BY HE & THE DIRTY
C.O. AND HE CAN GET A PERJURY BEEF;
— YOU MUST UNDERSTAND, THIS GUY IS A

Case 1:06-cv-00299-CW   Document 15   Filed 04/24/08   Page 65 of 82

LONG TIME FRIEND OF MINE (APPROX. 10
YRS) AND HE HAS DISCUSSED MANY THINGS
WITH ME (DRUG RIP OFFS & MURDERS; DIRTY
ATTORNEYS & INVESTIGATORS; KIDNAPPINGS;
CONSPIRACIES TO MURDER ATTORNEYS & U.S.
ATTORNEYS ETC., ALONG WITH ALL THE STUFF
IN YOUR FACILITY THAT I HAVE APPRISED
YOU OF), MY INTENTION IS TO PROTECT
ALL PARTIES INVOLVED, INCLUDING MS. REAL
DEAL, C.O.'S & HIM; I DON'T REALLY CARE
ABOUT SCOTT, A.B. ETC (I'VE ALREADY
TESTIFIED AGAINST THEM IN COURT, AND
WE'RE CURRENTLY AT WAR [I'VE GOT
A.B. CONTRACTS ON MY LIFE]), BUT THE
FACT OF THE MATTER IS THAT PERJURY
IS PERJURY, AND THERE ARE MUCH BIG-
GER THINGS GOING ON, THAN THE POOP
BUTT FIGHT BETWEEN SCOTT & THE D.C.
BLOCK, OR THE MANUFACTURED EVIDENCE
OF SCOTT WANTING TO KILL C.O.'S (THE
SIS HERE KNOWS THAT THAT IS B.S., I GAVE
THEM & THE F.B.I. INFO ON EVERYTHING
APPROX. 1½ YRS AGO [WHATS REALLY GO-
ING ON]), LIKE PROTECTING THE FEMALE
EMPLOYEE, THE C.O.'S, AND EVEN THE
DIRTY ATTORNEY & HIS FAMILY WHO ARE
AT RISK OF BEING KIDNAPPED, FORCED
TO PAY RANSOM, THEN KILLED---

IN TRUTH, IF IT WERE'NT FOR ALL THIS MUCH MORE SERIOUS STUFF, ITS DOUBTFUL I WOULD'VE COME FORWARD AND SAID ANYTHING AT ALL ---

BE ADVISED THAT I AM FORWARDING A COPY OF THIS TO DIRECTOR HAWK, TO KEEP HER UP TO DATE --- STAY WELL ---

END —

JOHN GRESCHNER
#02550–135
ADX – FLOR.
P.O. BOX 8500
FLORENCE, CO.
            81226–8500

C.C. FILE.
    DIR. HAWK.

TO: KATHLEEN HAWK SAWYER    8-19-01.
        DIR. - BOP
330 1ST ST., N.W.
WASHINGTON, D.C., 20534          EX # 18

DEAR DIRECTOR HAWK — MY BEST
        GREETINGS & REGARDS, I HOPE
THIS FINDS YOU WELL IN HEALTH AND
SPIRITS...
        ENCLOSED HEREWITH FIND THE
6-PG. COMMUNICATION TO S.I.S. LT.
FED. MED. CENTER — TO KEEP
YOU UP DATED...

                YOURS TRULY —

                JOHN GRESCHNER
                # 02550 - 135
                ADX - FLOR.
                P.O. BOX 8500
                FLORENCE, CO.
C.C. FILE.         81226 - 8500

To: Ms. Condoleezza Rice
National Security Advisor
Dept. of Defense
4000 Defense Pentagon
Washington, D.C., 20301

Ex #
19

Certificate of
Mailing Attached

Dear Ms. Rice — My best greetings and regards, I hope this finds you well in both health & spirits ___

I am writing this letter to you in your capacity of National Security Advisor, in the hope that this information will both reach you (my mail is being stolen in a attempt to keep all this under wraps), and that you will take prompt action ___ I authorize you to disseminate the following information to whomever you feel appropriate, specifically the CIA, NSA, Pentagon and DEA ___

Advisory: Numerous classified gov. documents (primarily DEA, but also CIA, NSA, Pentagon) have been stolen, including at least two (2) computer disks, for purposes of sale on the black market (to international drug cartels; terrorist organizations; organized crime, etc) the stolen materials include —

1.) International War on Drugs which name names (foreign gov. officials involved in same; informants; agents etc., including the major players involved [I had sent President Bush a letter, and a copy of same to U.S. Attor-

Ney General Ashcroft]); multimillion dollar payoffs, homicides, etc, and I warned President Bush to advise President Fox (Mexico) of numerous Mex. gov. officials at risk of extortion and/or assassination (and provided President Bush a listing of multiple names) ---

2) Assassinations (J.F.K; M.L.King Jr; Tijuana, Mex Chief of Police Alfredo de la Torre & Top Mex. Attorney General member Juan Manuel Izabal, Plus at least 3 others) ---

3) Terrorist organizations & activities (IRA, JRA, Islamic groups etc.).

4) Domestic & foreign financial institutions (at-risk due to Access Codes, Account # etc being stolen).

5) Numerous U.S. Citizens Names, addresses, S.S #; DMV#, in depth background info including financial etc (To steal identities & sack bank accounts).

I have been catching a lot of heat by culpable BOP officials (including threats of death etc), in a attempt to silence my exposure of all this — I feel it is critical that I get the word out, to protect all parties involved ---

Pg - 3\G. B.ee Isa\  J  Freschke?
#02550-135
6-19-01

THERE IS MUCH, MUCH MORE TO THIS, BUT
I'LL WAIT TO SEE IF YOU ACTUALLY RECEIVE
THIS COMMUNICATION (I'm GOING THROUGH
SERIOUS CHANGES TRYING TO GET THIS INFO
OUT)... FINALLY, BE ADVISED, THAT I HAVE
BEEN PRIVY TO A SERIES OF CONVERSATIONS,
WITH TWO (2) FOREIGN NATIONALS (A JORDAN-
AN NAMED OMAR [A INDIVIDUAL CONVICTED
OF A, 2 PIRACY & KILLING OF U.S. CITIZENS,
WHO IS A RADICAL OF FUNDAMENTAL ISLAM], AND
A CUBAN [A NARCO-TRAFFICKER, KIDNAPPER ETC])
THE SUBJECT MATTER BEING UPCOMING TERR-
ORIST ACTS ON U.S. SOIL (OMAR CLAIMS TO
BE ASSOCIATED WITH VARIOUS MID-EAST TERR-
ORIST GROUPS, INCLUDING B. J LADINS) AND
HE CLAIMS THAT THERE WILL BE HI-JACKINGS
OF COMMERCIAL A.RLINES, AND STRIKES
AGAINST THE FED. GOV (WHITE HOUSE OR OTHER
STATE DEPT. BUILDINGS; A LARGE U.S. MILI-
TARY COMPLEX; THE JUSTICE DEPT), AND
THAT (I QUOTE): "THEY'RE GOING TO FINISH
THE JOB ON THE WORLD TRADE CENTER"
I DON'T KNOW HOW CREDIBLE THIS IS, BUT
CONSIDERING OMAR'S BACKGROUND, I
THOUGHT I SHOULD PASS IT ON TO YOU
AND OTHER INTERESTED AGENCIES...
    PLEASE ACKNOWLEDGE RECEIPT OF
THIS COMMUNICATION SO I KNOW YOU HAVE

#02550-135 #67
6-19-01

ACTUALLY RECEIVED IT; I MUST LIMIT
WHAT I SAY, AS THIS MODE OF COMMUNICATION
IS NOT SECURE, AND THERE ARE LEAKS
IN THE SIS\SIA OFFICE, AND IT IS VERY
DANGEROUS TO ME --- I DO NOT KNOW
F PRESIDENT BUSH & U.S. ATTY GEN. ASH-
CROFT EVER RECEIVED MY EARLIER LETTER,
OR FOR THAT MATTER, WHETHER FBI DIR-
FREEH, OR DEA COMMISSIONER T. CONSTANT
INE, HAS EITHER (REGARDING STOLEN DOCS),
IS INCREDIBLE TO ME, THAT THEY (BOP) ARE
ACTUALLY GETTING AWAY WITH THIS STUFF, AND
THAT THE LOCAL FBI ARE ALLOWING THEMSELVES
TO BE CONTROLLED BY THEM (INCLUDING THE
DESTRUCTION OF EVIDENCES (FIRING CIRCUITS ETC)
OR LETTER & CAR BOMBS, TO PROTECT A INFOR-
OANT(S) [GENE BENTLY & REVN ROACH] CREDIBILITY);
E HAS TO GO THROUGH U.S. SENATOR WELLSTONE
TO INITIALLY GET THE INFO TO FED. LAW EN-
ORCEMENT IN D.C., TO THWART A BOMBING
PLOT AGAINST THE FED. GOV. - AND THEY STILL
ONVINCES (LIES) (TO LOCAL) FBI, TO IGNORE THE BOMB
THREAT... STAY WELL IN HEALTH & SPIRITS -
S. LEZERLY -

JOHN GRESCHNER
#02550-135
ADX- FLOR.
P.O. BOX 8500
FLORENCE, CO.
81226-8500

C. FILE.



GRESCHNER #02550-135   CVRCO-2-4-7

EXHIBIT #1-2-2   EX#10

GRESCHNER, D.   I-06-102
#02550-135

**U.S. POSTAL SERVICE   CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received From: JOHN GRESCHNER
#02550-135
U.S. PENITENTIARY-MAX
P.O. BOX 8500
FLORENCE, CO.
81226-8500

One piece of ordinary mail addressed to: C. RICE—
NATIONAL SECURITY ADVISOR
DEPT. OF DEFENSE
4000 DEFENSE PENTAGON
WASHINGTON, D.C.
20301

PS Form 3817, Mar. 1989

MAILED: 6-20-01.

---

MAILED: 11-9-00

**U.S. POSTAL SERVICE   CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received From: JOHN GRESCHNER
#02550-135
U.S. PENITENTIARY-MAX.
P.O. BOX 8500
FLORENCE, CO.
81226-8500

One piece of ordinary mail addressed to: L.J. FREEH
DIRECTOR-F.B.I.
DEPT. OF JUSTICE
935 PENNSYLVANIA, AVE, N.W.
WASH., D.C.
20535

Greschner 02550-135

PS Form 3800, April 1995
US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to L.S. FREEH F.B.I. DIRECTOR
Street & Number 935 PENN. AVE. N.W.
Post Office, State, & ZIP Code WASH., D.C.
20535

Postage $2.98
Certified Fee 2.40
Special Delivery Fee
Restricted Delivery Fee
Return Receipt Showing to Whom & Date Delivered
Return Receipt Showing to Whom, Date, & Address
TOTAL Postage & Fees $2.98
Postmark or Date FLORENCE CO

Z 226 826 831

---

**U.S. POSTAL SERVICE   CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received From: JOHN GRESCHNER
#02550-135
U.S. PENITENTIARY-MAX.
P.O. BOX 8500
FLORENCE, CO.
81226-8500

One piece of ordinary mail addressed to: D.W.H.
PS Form 3817, Mar. 1989
Affix fee here or meter tape

MAILED 12-26-99

---

**U.S. POSTAL SERVICE   CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received From: JOHN GRESCHNER
#02550-135
U.S. PENITENTIARY-MAX.
P.O. BOX 8500
FLORENCE, CO.

One piece of ordinary mail addressed to: 417 LITCHFIELD AVE., WELLSTONE

MAILED: 11-9-00

700 GRANT
SUITE-300
PITTSBURGH, PA

EX. T
TO: [ADises[a  9-14-01

MR. D. RUMSFELD
  SEC. OF DEF.
MR R. MUELLER, DIR F.B.I.

CERTIFICATE OF
MAILING ATTACHED

GREETINGS — I HOPE THIS FINDS YOU'S WELL
IN BOTH HEALTH & SPIRITS... I AM
SENDING THIS PKG SECOND (AFTER I
SMUGGLE IT TO THE U.S. MAGISTRATE TO
ENSURE THAT IT LEAVES THIS FACILITY &
IS FORWARDED TO YOU'S), AS REDUNDENCY
TO INSURE YOUR RECEIPT OF SAME...
— BE ADVISED, THAT THE INDIVIDUALS &
ORGANIZATIONS INVOLVED IN THE RECENT
EVENTS (9-11-01) MAY UTILIZE EXPLOSIVE
DEVICES AND/OR BIO-CHEM. AGENTS, AS
A CONTINUING (NEXT) PHAZE IN THEIR EFF-
ORTS (AFTER HIJACKING PHAZE), SO WATCH
ANY POTENTIAL TARGETS AT GROUND LEVEL
I HAS RECENTLY ADVISED DURING A CON-
VERSATION THAT THE PALESTINIANS NEEDED
SHOULDER FIRED ROCKETS TO DEFEND A-
GAINST ISRAELS HELICOPTER GUNSHIPS, AND
THE INDIVIDUAL REMARKED THAT THE "BOSS"
(BIN LADEN) HAD STINGERS IN AFGHANI-
STAN FROM THE C.I.A.; ADDITIONALLY, THAT
THEY WERE BUYING EASTERN BLOC ROCKETS
ON THE BLACK MARKET; (NOTE: OVERTURE
HAVE BEEN MADE TO PURCHASE ORDNANCE
FROM CUBAN SOURCES — THIS IS SOMETHING
I WAS TRYING TO WARN AUTHORITIES [FBI]

ABOUT BACK IN '99 [.] CONNECTION WITH DOD  
ICAL MUSLIM FACTIONS IN THE U.S.] [ALSO  
THE ATF], IN CONNECTION WITH NARCO-TERROR  
CONSPIRACIES, BUT SIS\SIA OFFICIALS COVERED IT  
UP & DESTROYED F.R. IN \ ARMING CIRCUITS TO  
PROTECT INFORMANTS ON A RICO CASE; ALSO  
OF CUBAN MILITARY CONNECTIONS FOR OR-  
DINANCE & OTHER ACTIVITIES TOO SERIOUS  
TO COMMIT TO PAPER (TOO MANY LIVES  
AT RISK IN THIS UNSECURE COMMUNICA-  
TION]) - - -  

— NOTE: I'VE SEEN THAT MOHAMED ATA IS  
ID'D AS ONE OF THE HIJACKERS; THIS  
INDIVIDUAL SPECIFICALLY MENTIONED ATA  
TO ME (HE SPEAKS ARABIC [VERY BROKEN ENGLISH  
W\ A HEAVY ACCENT]), HE SAID MOHAMED ATA AS  
"MOHAMEDATTA" - - - HE MENTIONED OTHER NAMES,  
BUT ALL ARE CLEARLY ARABIC NAMES - - -  
THERES MORE, BUT THATS IT FOR NOW,  
PLEASE ACKNOWLEDGE RECEIPT SO I KNOW  
THIS ONE MADE IT THROUGH... WARN PRES-  
IDENT BUSH & SEC. STATE ALBRIGHT OF  
THREATS AGAINST THEM... STAY WELL -  
S. SCERELY -  

JOHN GRESCHNER  
#02550-135  
A>X - FLR  
P.O. BOX 8500  
FLORENCE, CO.  
81226-8500  

C.C. FILE.

*Example B* - Interim and Pre-Release Reviews - Calculate the number of months in custody required by the original presumptive date; check to see if the allowable credit for superior program achievement has already been awarded.

(d) For cases originally continued to expiration, the statutory good time date will be used both for computing the maximum reduction permissible and as the base from which the reduction is to be subtracted for sentences of less than five years. For sentences of five years or more, the two-thirds date will be used for these purposes. If the prisoner's date has been further reduced by extra good time and such reduction equals or exceeds the reduction permissible for superior program achievement, the Commission will not give an additional reduction for superior program achievement.

*Example C* - Prisoner's statutory good time date occurs at 37 months. The permissible reduction for superior program achievement is up to 4 months. The prisoner has earned 4 or more months extra good time; reduction for superior program achievement is not applicable.

(e) This rule provides criteria and standards for consideration of superior program achievement. It does not in any way affect the voting quorums for Commission actions required under §2.17, §2.23, §2.24, §2.26, §2.27.

### §2.61 QUALIFICATIONS OF REPRESENTATIVES.

(a) A prisoner or parolee may select any person to appear as his or her representative in any proceeding, and any representative will be deemed qualified unless specifically disqualified under paragraphs (b) or (c) of this section. However, an examiner or examiner panel may bar an otherwise qualified representative from participating in a particular hearing, provided good cause for such action is found and stated in the record (*e.g.*, willfully disruptive conduct during the hearing by repeated interruption or use of abusive language). In certain situations, good cause may be found in advance of the hearing (*e.g.*, that the proposed representative is a prisoner in disciplinary segregation whose presence at the hearing would pose a risk to security, or has a personal interest in the case which appears to conflict with that of the parole applicant).

(b) The Commission may disqualify any representative from appearing before it for up to a five-year period if, following a hearing, the Commission finds that the representative has engaged in any conduct which demonstrates a clear lack of personal integrity or fitness to practice before the Commission (including, but not limited to, deliberate or repetitive provision of false information to the Commission, or solicitation of clients on the strength of purported personal influence with U.S. Parole Commissioners or staff).

(c)(1) In addition to the prohibitions contained in 18 U.S.C. 207, no former employee of any Federal criminal justice agency (in either the Executive or Judicial Branch of the Government) with the exception of the Federal Defender Service, shall be qualified to act as a representative for hire in any case before the Commission for one year following termination of Federal employment. However, such persons may be employed by, or perform consulting services for, a private firm or other organization providing representation before the agency, to the extent that such employment or service does not include the performance of any representational act before the Commission.

(2) No prisoner or parolee may serve as a representative before the Commission, at the hire of individual clients, in any case.

### §2.62 REWARDING ASSISTANCE IN THE PROSECUTION OF OTHER OFFENDERS: CRITERIA AND GUIDELINES.

(a) The Commission may consider as a factor in the parole release decision-making a prisoner's assistance to law enforcement authorities in the prosecution of other offenders.

(1) The assistance must have been an important factor in the investigation and/or prosecution of an offender other than the prisoner. Other significant assistance (*e.g.*, providing information critical to prison security) may also be considered.

(2) The assistance must be reported to the Commission in sufficient detail to permit a full evaluation. However, no promises, express or implied, as to a Parole Commission reward shall be given any weight in evaluating a recommendation for leniency.

(3) The release of the prisoner must not threaten the public safety.

(4) The assistance must not have been adequately rewarded by other official action.

(h) If the assistance meets the above criteria, the Commission may consider providing a reduction of up to one year from the presumptive parole date that the Commission would have deemed warranted had such assistance not occurred. If the prisoner would have been continued to the expiration of sentence, any reduction will be taken from the actual date of the expiration of the sentence. Reductions exceeding the one year limit specified above may be considered only in exceptional circumstances.

(c) In the case of an eligible DC Code prisoner whose assistance meets the criteria of this section, the Commission may consider deducting a point under Category V of the Point Assignment Table in the Appendix to §2.80, in addition to any other deduction for positive program achievement, when considering such prisoner for parole. In the case of a DC Code prisoner with an unserved minimum term, the Commission may consider filing an application under § 2.76 for a reduction of up to one-third of such term less applicable good time.

*Notes and Procedures*

**2.62-01.** *Application.*

(a) The following methodology is to be used in applying this provision:

(1) Determine how much (if any) reduction is warranted. The following are among the factors that may be considered:

(A) The extent and quality of the assistance *(e.g.,* the extent to which the assistance has been an important factor in the prosecution of a serious offender, has resulted in the saving of life or the prevention of a serious offense, has prevented a potentially serious institutional disturbance, etc.).

(B) Whether the information provided places the prisoner (or his family) at substantial risk of retaliation.

(C) Whether information provided is timely, complete, thorough, and not provided in a piecemeal fashion.

(D) Whether information provided would have been available to law enforcement officials without the prisoner's cooperation.

(2) If the reviewer determines that exceptional circumstances warrant a reward of more than one year, the specific circumstances are to be stated *(e.g.,* an offender continues to testify against an organized crime figure after an attempt on his life has been made; an offender saved the life of a correctional officer during a disturbance).

(3) Suggested Wording for Hearing Summary: "The panel believes the nature and extent of the assistance provided (described earlier in the summary) warrants a ___ month reward and that this reward will not threaten public safety. Therefore, a presumptive parole date at ___ months is recommended."

(4) The reward granted is to take into account the total reward contemplated by the Commission whether the cooperation is given at one time or over a period of time.

(5) "Actual date of the expiration of the sentence" means the mandatory release date less good time, *i.e.,* the date the inmate will actually be released from prison.

(b) In D.C. cases, for prisoners who have already had a point subtracted for cooperation under the guidelines in effect from August 5, 1998 through December 3, 2000 (the former Appendix to §2.80 guidelines), the conversion rule at §2.80(o)(3) applies. Otherwise, the possible reduction for cooperation should be considered in accordance with §2.62(b) to set a presumptive parole date or the date of a reconsideration hearing.

**§2.63 QUORUM.**

(b)(1) There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available (18 U.S.C. 4207). The Commission encourages the submission of relevant information concerning an eligible prisoner by interested persons.

(2) To permit adequate review of information concerning the prisoner, materials submitted to the Commission should be received by the Commission no later than the first day of the month preceding the month of the scheduled hearing docket.

(3) If material of more than six (6). double-spaced. letter-sized pages is first submitted at the time of the hearing (or preliminary interview) and the hearing examiner (or person conducting the hearing or preliminary interview) concludes that it is not feasible to read all the material at that time, the person submitting the material will be permitted to summarize it briefly at the hearing (or preliminary interview). All of the material submitted will become part of the record to be considered by the Commission in its review of the proceedings.

(4) The Commission will normally consider only verbal and written evidence at hearings. Recorded audio and visual material will be reviewed at hearings only if there is no adequate substitute to permit a finding under paragraph (c) of this section. Otherwise. recorded audio and visual material should be submitted prior to the hearing for review and summarization, pursuant to paragraph (b)(2) of this section.

(c) The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. If the Commission is given evidence of criminal behavior that has been the subject of an acquittal in a federal, state, or local court, the Commission may consider that evidence if:

(1) The Commission finds that it cannot adequately determine the prisoner's suitability for release on parole, or to remain on parole, unless the evidence is taken into account;

(2) The Commission is satisfied that the record before it is adequate notwithstanding the acquittal;

(3) The prisoner has been given the opportunity to respond to the evidence before the Commission; and

(4) The evidence before the Commission meets the preponderance standard.

In any other case, the Commission shall defer to the trial jury. Offense behavior in Category 5 or above shall presumptively support a finding under paragraph (c)(1) of this section.

(d) Recommendations and information from sentencing judges, defense attorneys, prosecutors, and other interested parties are welcomed by the Commission. In evaluating a recommendation concerning parole, the Commission must consider the degree to which such recommendation provides the Commission with specific facts and reasoning relevant to the statutory criteria for parole (18 U.S.C. 4206) and the application of the Commission's guidelines (including reasons for departure therefrom). Thus, to be most helpful, a recommendation should state its underlying factual basis and reasoning. However, no recommendation (including a prosecutorial recommendation pursuant to a plea agreement) may be considered as binding upon the Commission's discretionary authority to grant or deny parole.

*Notes and Procedures*

■ 2.19-01. *Prohibition Against Use of Illegal Wiretap Evidence.* Under 18 U.S.C. 2515, courts and other government authorities, including the Commission, are prohibited from using any illegal wiretap evidence for any purpose. Therefore, no information acquired from an illegal wiretap shall be used by the Commission for determining offense severity, salient factor score, or for any other purpose in parole release, revocation, reparole, rescission, or any other decision.

■ 2.19-02. *Not Guilty Verdicts After Trial.*

the expiration of the maximum term for which he was sentenced, unless the prisoner's sentence is terminated early by the appropriate military clemency board.

*Notes and Procedures*

2.35-01 A military prisoner who committed his crime before August 16, 2001, and who is mandatorily released, is not subject to supervision. See 2.2-03(c).

**§2.36 RESCISSION GUIDELINES.**

(a) The following guidelines shall apply to the sanctioning of disciplinary infractions or new criminal conduct committed by a prisoner during any period of confinement that is credited to his current sentence (whether before or after sentence is imposed), but prior to his release on parole; and by a parole violator during any period of confinement prior to or following the revocation of his parole (except when such period of confinement has resulted from initial parole to a detainer). These guidelines specify the customary time to be served for such behavior which shall be added to the time required by the original presumptive or effective date. Credit shall be given towards service of these guidelines for any time spent in custody on a new offense that has not been credited towards service of the original presumptive or effective date. If a new concurrent or consecutive sentence is imposed for such behavior, these guidelines shall also be applied at the initial hearing on such term.

(1) ADMINISTRATIVE RULE INFRACTION(S) (including alcohol abuse) normally can be adequately sanctioned by postponing a presumptive or effective date by 0-60 days per instance of misconduct, or by 0-8 months in the case of use or simple possession of illicit drugs or refusal to provide a urine sample. Escape or other new criminal conduct shall be considered in accordance with the guidelines set forth below.

(2) ESCAPE/NEW CRIMINAL BEHAVIOR IN A PRISON FACILITY (including a community corrections center). The time required pursuant to the guidelines set forth in paragraphs (a)(2)(i) and (ii) of this section shall be added to the time required by the original presumptive or effective date.

(i) Escape or Attempted Escape

(A) Escape or attempted escape,
    except as listed below             8-16 months

(B) If from non-secure custody
    with voluntary return in           <=6 months
    6 days or less

(C) If by fear or force applied to person(s), grade under (ii) but not less than Category Five.

*Notes*:

(1) If other criminal conduct is committed during the escape or during time spent in escape status, then time to be served for the escape/attempted escape shall be added to that assessed for the other new criminal conduct.

(2) Time in escape status shall not be credited.

(3) Voluntary return is defined as returning voluntarily to the facility or voluntarily turning one's self in to a law enforcement authority as an escapee (not in connection with an arrest on other charges).

(4) Non-secure custody refers to custody with no significant physical restraint [e.g., walkaway from a work detail outside the security perimeter of an institution; failure to return to any institution from a pass or unescorted furlough; or escape by stealth from an institution with no physical perimeter barrier (usually a camp or community corrections center)].

(ii) Other New Criminal Behavior in a Prison Facility

| **Severity Rating of the New Criminal Behavior (from §2.20)** | **Guideline Range** |
|---|---|
| Category One | <=8 months |
| Category Two | <=10 months |
| Category Three | 12-16 months |
| Category Four | 20-26 months |
| Category Five | 36-48 months |
| Category Six | 52-64 months |
| Category Seven | 64-92 months |
| Category Eight | 120 + months |

*Note*: Grade unlawful possession of a firearm or explosives in a prison facility, other than a community corrections center, as Category Six. Grade unlawful possession of a firearm in a community corrections center as Category Four. Grade unlawful possession of a dangerous weapon other than a firearm or explosives (*e.g.*, knife) in a prison facility or community corrections center as Category Three.  *[handwritten: I.E. "SEVERITY RATING"]*

(3) NEW CRIMINAL BEHAVIOR IN THE COMMUNITY (*e.g.*, while on pass, furlough, work release, or on escape). In such cases, the guidelines applicable to reparole violators under §2.21 shall be applied, using the new offense severity (from §2.20) and recalculated salient factor score (such score shall be recalculated as if the prisoner had been on parole at the time of the new criminal behavior). The time required pursuant to these guidelines shall be added to the time required by the original presumptive or effective date.

*Note*: Offenses committed in a prison or in a community corrections center that are not limited to the confines of the prison or community corrections center (*e.g.*, mail fraud of a victim outside the prison) are graded as new criminal behavior in the community.

(b) The above are merely guidelines. Where the circumstances warrant, a decision outside the guidelines (above or below) may be rendered provided specific reasons are given. For example, a substantial period of good conduct since the last disciplinary infraction in cases not involving new criminal conduct may be treated as a mitigating circumstance.

*Notes and Procedures*

■ 2.36-01. *Administrative Infractions*. The rescission guidelines for administrative infractions for simple possession or use of illicit drugs (other than alcohol) or refusal to provide a urine specimen are 0-8 months per incident. The rescission guidelines for other administrative infractions (including simple possession or use of alcohol) are 0-60 days per incident. Note: Multiple instances of drug abuse are considered as separate violations only when separated by an intervening disciplinary report. If a decision is rendered following a rescission hearing to defer release above the guideline range for administrative rule infractions, the Notice of Action must state that a decision above the guideline range is found warranted and specify the reasons therefore.

■ 2.36-02. *Escape/New Criminal Behavior Within a Prison Facility or Within a Community Corrections Center.*

(a) Escape or Attempted Escape Without Force or Threat. The Notice of Action must indicate the appropriate guideline range to be added to the time required by the original presumptive or effective date, and--if a decision is rendered outside the guideline range--the notice must state with specificity the factors warranting such a decision.

(b) *Other New Criminal Behavior Committed Within a Prison Facility or Within a Community Corrections Center.* New criminal conduct within the confines of a prison facility (or within a CCC) shall be assessed pursuant to the guidelines set forth in §2.36(a)(ii). Note: Offenses not limited to the confines of a prison facility or CCC (*e.g.*, submitting false tax returns to the IRS from a prison facility) are graded as new criminal behavior in the community. The Notice of Action must indicate the new offense severity and the appropriate guideline range to be added to the time required by the original presumptive or effective date, and--if a decision is rendered outside the guideline range--the notice must state with specificity the factors warranting such a decision.

(c) *Escape by Fear or Force.* Grade as "Other New Criminal Behavior in a Prison Facility," but not less than Category Five. Example: A prisoner escapes from an institution work detail by overpowering the correctional officer escorting the detail. The officer does not sustain bodily injury. Grade as Category Five (*i.e.*, add 36-48 months). This sanction is in place of, not in addition to, the sanction for escape without force. The Notice of Action must indicate the offense severity, the appropriate guideline range to be added to the time required by the original presumptive or effective date, and--if a decision is rendered outside the guideline range--the notice must state with specificity the factors warranting such a decision.

(d) *Minor Assaults.* Certain assaults may be rather minor (*e.g.*, shoving, throwing non-dangerous objects), or, in some cases it may not be possible to establish which offender is the aggressor (*e.g.*, where two prisoners are found fighting). In cases of minor assaults such as described above, grade as an administrative violation. Examples: (1) During an argument, a prisoner shoves and verbally abuses another prisoner; (2) Two prisoners are found fighting, but it cannot be established which prisoner was the aggressor; (3) A prisoner throws urine at a correctional officer from a cell while in disciplinary segregation.

■ 2.36-03. *New Criminal Behavior in the Community (e.g., While on Pass from a Community Corrections Center, or on Furlough, Work Release, or Escape).*

(a) Apply the reparole guidelines under §2.21(b). Recalculate the salient factor score as if the prisoner had been on parole at the time of the new criminal behavior. If other criminal behavior is committed during an escape or while on escape status, add the time to be served for the escape or attempted escape to the time that is assessed for the other new criminal conduct. The Notice of Action must indicate the new salient factor score, the appropriate offense severity rating, and the guideline range, as well as the Commission's decision with regard to the release date.

(b) Note: New criminal behavior includes a new felony or misdemeanor offense with the following exceptions. Possession of a small quantity of drugs for the prisoner's own use, a minor traffic infraction, or a minor " public order" misdemeanor (such as disorderly conduct) shall be treated as an administrative infraction under 2.36-01 above unless another criminal offense to which §2.21 applies also was committed. In such case, all the offenses shall be considered under §2.21 (by applying the multiple separate offense rule).

■ 2.36-04. *Technical Escapes.* A prisoner on pass or furlough who fails to return to Bureau custody within the required time frame solely because of a new arrest is not considered an escapee for rescission guideline purposes. However, a prisoner who fails to return at the required time and is later prevented from returning by a new arrest is treated as an escapee (without voluntary return).

### ■ §2.37 DISCLOSURE OF INFORMATION CONCERNING PAROLEES; STATEMENT OF POLICY.

(a) Information concerning a parolee under the Commission's supervision may be disclosed to a person or persons who may be exposed to harm through contact with that particular parolee if such disclosure is deemed to be reasonably necessary to give notice that such danger exists.

(b) Information concerning parolees may be released by a Chief U.S. Probation Officer to a law enforcement agency (1) as deemed appropriate for the protection of the public or the enforcement of the conditions of parole or (2) pursuant to a request under 18 U.S.C. 4203(e).

*Item B* The commitment from which paroled or released to supervised release (including a prison term ordered for a prior supervised release revocation), counts as a prior commitment.

*Item C* Use the age at commencement of the violation behavior (including new criminal behavior).

*Item D* Count backwards three years from the commencement of the violation behavior (including new criminal behavior).

*Item E* By definition, no point is credited for this item.

*Item F* Use the age at commencement of the violation behavior (including new criminal behavior).

SPECIAL INSTRUCTIONS - CONFINEMENT/ESCAPE STATUS VIOLATORS WITH NEW CRIMINAL BEHAVIOR IN THE COMMUNITY THIS TIME

*Item A* The conviction being served at the time of the confinement/escape status violation counts as a prior conviction.

*Item B* The commitment being served at the time of the confinement/escape status violation counts as a prior commitment.

*Item C* Use the age at commencement of the confinement/escape status violation.

*Item D* By definition, no point is credited for this item.

*Item E* By definition, no point is credited for this item.

Item *F* Use the age at commencement of the confinement/escape status violation.

*Notes and Procedures*

■2.20-01. *Purpose of the Guidelines*

A.     *From the Parole Commission and Reorganization Act, Public Law 94-233, 18 United States Code*

§4206 Parole determination criteria

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

"(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law;" and (2) that release would not jeopardize the public welfare;

Subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(b) The Commission shall furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing; provided, that the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

B.     *From Joint Explanatory Statement of the Committee of Conference, The Parole Commission and Reorganization Act - Section by Section Analysis*

are present: (i) the subject has at least two prior revocations on the current sentence or consecutive/concurrent sentence(s); and (ii) the total number of prior commitments is more than nine. See 2.20-06(B).]

. .because you are a p o o r e r parole risk than indicated by your salient factor score: you committed a state firearms act offense while on bond in your present criminal case.

. . .because you are a poorer parole risk than indicated by your salient factor score: [you have had an on-going involvement in loan-sharking and extortion activities for the past 10 years] [you have admitted to on-going involvements in drug trafficking for the past 10 years].

*5. More Serious Parole Risk (History of repetitive assaultive behavior):*

. . .because y o u are a more serious parole risk than indicated by your salient factor score due to your history of repetitive assaultive behavior: [give specifics. *e.g.*, your prior record shows a conviction for aggravated assault and a conviction for armed robbery. Your present offense behavior involved a bank robbery in which an overt threat of violence was made].

*6. More Serious Parole Risk (History of repetitive sophisticated criminal behavior):*

. . .because you are a more serious parole risk than indicated by your salient factor score due to your history of repetitive sophisticated criminal behavior: three out of five prior convictions involve sophisticated fraud similar to your current offense.

*7. More Serious Parole Risk (Unusually extensive and serious prior record):*

. . .because you are a more serious parole risk than indicated by your salient factor score due to your extensive and serious prior record [*e.g.*, you have eight previous convictions for serious offenses (give specifics)].

[Example 8: Institutional Misconduct]

*8. Specified instance of institutional misconduct:*

. . .because you failed to maintain a good institutional record. You were found to have [been in an unauthorized area without permission] [possessed narcotic paraphernalia] by an institutional disciplinary committee on September 9, 1976. [NOTE: Consult Rescission Guidelines for appropriate penalty.]